TRINETTE G. KENT (State Bar No. 222020)
Lemberg Law, LLC
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (480) 247-9644
Facsimile: (480) 717-4781
E-mail: tkent@lemberglaw.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Tony Woo, Daniel Rifkin, and Douglas P. Schwert, *on behalf of themselves and all others similarly situated,*<br><br>Plaintiffs,<br><br>vs.<br><br>American Honda Motor Co., Inc.,<br><br>Defendant. | Case No.: _____<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**(1) Breach of Express Warranty under the Magnuson-Moss Warranty Act**<br>**(2) Breach of Express Warranty under Cal. Comm. Code § 2313**<br>**(3) Breach of Express Warranty pursuant to Song-Beverly Consumer Warranty Act**<br>**(4) Breach of Implied Warranty pursuant to Song-Beverly Consumer Warranty Act**<br>**(5) Violation of California Consumers Legal Remedies Act**<br>**(6) Violation of California's Unfair Competition Law**<br>**(7) Breach of Express Warranty under Colo. Rev. Stat. Ann. § 4-2-313**<br>**(8) Breach of Implied Warranty under Colo. Rev. Stat. Ann. § 4-2-314**<br>**(9) Breach of Express Warranty under Tenn. Code Ann. § 47-2-313**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Plaintiffs, Tony Woo, Daniel Rifkin, and Douglas P. Schwert, by undersigned counsel, bring the following complaint against American Honda Motor Co., Inc., and allege, on their own behalf and on behalf of all those similarly situated, as follows:

## INTRODUCTION

1.     Plaintiffs Tony Woo ("Woo"), Daniel Rifkin ("Rifkin"), and Douglas P. Schwert ("Schwert," and together with Woo and Rifkin, the "Plaintiffs") bring this lawsuit against American Honda Motor Co., Inc. (hereafter "Defendant" or "Honda") on their own behalf and on behalf of a proposed class of past and present owners and lessees of the following 2017-2019 Honda CR-V models: the EX, EX-L and the Touring (the "Class Vehicles").

2.     Plaintiffs and the Class were damaged because Class Vehicles contain defective display screens (the "Display Screen") which dim and go dark, freeze, or shine at full brightness, causing driver distraction and rendering the vehicle's information center inoperable.

3.     Specifically, the 7-inch touch-sensitive Display Screen allows drivers to access and operate Class Vehicles' safety, information, communication, and entertainment features such as smartphone integration, hands-free calling, navigation (if equipped), Bluetooth audio streaming, radio and music controls, rear-view camera and vehicle settings (collectively, "Infotainment Features").[1]

---

[1]  https://automobiles.honda.com/cr-v/specs-features-trim-comparison (last visited September 12, 2019).

2

4.      The Display Screen is standard equipment on the 2017-2019 Honda CR-V vehicles at EX, EX-L and Touring trim levels.[2]

5.      In practice, the Display Screen regularly and unexpectedly malfunctions while the Class Vehicles are in motion.  At such times, the Display Screen (1) dims or goes dark by itself, or (2) freezes, or (3) goes into full bright mode blinding a driver during night time, causing driver distraction, and rendering the above-listed Infotainment Features inoperable (hereinafter referred to as "Display Defect").

6.      The Display Screen in Woo's 2018 Honda CR-V EX repeatedly and unexpectedly switched to an elevated brightness setting and then went dark, and the Display Screen continued this behavior, rendering Infotainment Features inoperable and uncontrollable, until the Display Screen stopped the cycle by itself or until Woo stopped the car and restarted it.

7.      Likewise, the Display Screen in Rifkin's 2017 Honda CR-V EX also repeatedly and unexpectedly switched its brightness setting and then went dark, and the Display Screen continued through such reboot cycle rendering Infotainment Features inoperable and uncontrollable, until Rifkin stopped the car and restarted it.

8.      Similarly, the Display Screen in Schwert's 2018 Honda CR-V Touring repeatedly and unexpectedly went dark, or the Display Screen's buttons froze, rendering radio, navigation, and other Infotainment Features inoperable, while the vehicle was in motion, causing Schwert great distraction and aggravation.

---

[2] *Id.*

3

9.    Moreover, Plaintiffs' experiences are not unique; numerous other drivers have complained about the Display Screen dimming and going dark, or distracting and blinding drivers by switching to full bright at night by itself.

10.    In addition, many drivers reported their complaints with the Display Screen to the National Highway and Traffic Safety Administration ("NHTSA").[3]

11.    On January 23, 2019, Honda issued a Tech Line Summary Article ("TLSA"), acknowledging the Display Defect which, Honda admitted, it did not know how to fix.[4]

12.    Honda directed its TLSA at the dealers' service departments, *not* at the dealers' sales departments, and did not instruct its dealers to inform prospective Honda consumers that the Class Vehicles they were about to purchase or lease suffered from the Display Defect.

13.    Although Honda knew of such Display Screen faults from the time the 2019 Class Vehicles became available for sale in fall of 2018, and certainly at least as of January 23, 2019, when it published the TLSA (and sooner as Honda gathered information and data to prepare such publication), Honda has not disclosed the Display Defect to consumers.

14.    Plaintiffs have given Honda reasonable opportunities to cure the Display Defect, but Honda has been unable to do so within a reasonable time.

---

[3] https://www.nhtsa.gov/vehicle/2017/HONDA/CR-V/SUV/AWD (last visited September 23, 2019).
[4] https://static.nhtsa.gov/odi/tsbs/2019/MC-10152765-0001.pdf (last visited September 23, 2019).

15.    Honda's conduct is in breach of express and implied warranties, the Magnuson-Moss Warrant Act, 15 U.S.C. § 2301, *et seq.* (the "MMWA"), and violates the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* (the "UCL"), and the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* (the "CLRA").

16.    Honda has and will continue to benefit from its unlawful conduct – by selling more vehicles, at a higher price, and avoiding warranty obligations – while consumers are harmed at the point of sale as their vehicles continue to suffer from the unremedied defects with the Display Screen.  Had Plaintiffs and other proposed class members known about the defect at the time of purchase or lease, they would not have bought or leased the Class Vehicles, or would have paid substantially less for them.

17.    To remedy Honda's unlawful conduct, Plaintiffs, on behalf of proposed class members, seek damages and restitution from Honda, as well as notification to class members about the defect.

## **PARTIES**

18.    Plaintiff Tony Woo is, and at all times mentioned herein was, an adult individual who resided in Pleasant Hill, California.

19.    Plaintiff Daniel Rifkin is, and at all times mentioned herein was, an adult individual residing in Denver, Colorado.

20.    Plaintiff Douglas P. Schwert is, and at all times mentioned herein was, an adult individual residing in Signal Mountain, Tennessee.

5

21.    Defendant American Honda Motor Co., Inc. is headquartered at 1919 Torrance Boulevard, Torrance, California 90501-2746.

## JURISDICTION AND VENUE

22.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and Honda are citizens of different states.

23.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Honda resides in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

**A. Honda's Display Screen**

24.    Defendant American Honda Motor Co., Inc. is the manufacturer, distributor, and warrantor of all Class Vehicles sold and leased within the United States.

25.    Since at least December of 2016, Honda has designed, manufactured, distributed, sold, and leased the Class Vehicles.  Honda has sold, directly or indirectly, through dealers and other retail outlets, thousands of Class Vehicles equipped with the Display Screen in California and nationwide.

6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

26.    In its online marketing materials[5] and in its marketing brochure[6] for the Class Vehicles, Honda advertised that Class Vehicles are equipped with the Display Screen.

27.    Specifically, the 7-inch touch-sensitive Display Screen allows drivers to access and operate such Class Vehicles' safety, information, communication, and entertainment features as smartphone integration, hands-free calling, navigation (if equipped), Bluetooth audio streaming, playing of radio and music, and rear-view camera when moving in reverse.[7] *See* Illustration 1, below.[8]



Illustration 1

---

[5] https://automobiles.honda.com/cr-v/specs-features-trim-comparison (last visited September 12, 2019).

[6] https://automobiles.honda.com/-/media/Honda-Automobiles/Vehicles/2017/CR-V/Brochures/weird/MY17CRV-Wave2-Reprint.pdf (last visited October 25, 2019).

[7] https://automobiles.honda.com/cr-v/specs-features-trim-comparison (last visited September 12, 2019).

[8] https://owners.honda.com/vehicles/information/2018/CR-V/features/Audio-Connectivity/1/audio-connectivity-youtube (last visited September 20, 2019).

7

28.    Display Screen is standard equipment on the following 2017-2019 Honda CR-V models: the EX, EX-L and the Touring.[9]

29.    Upon information and belief, Honda created, authorized, approved, and disseminated its online marketing materials and its marketing brochure about Class Vehicles' Display Screen out of its Torrance, California headquarters to all United States purchasers or lessees of the Class Vehicles, and Honda manages, directs and conducts its sales and service operations out of its Torrance, California headquarters.[10]

**B. Display Defect Poses an Unreasonable Safety Hazard**

30.    Unbeknownst to Honda's customers, Class Vehicles are sold with a capacitive touch panel sensor that is defective in material and/or workmanship, which causes repeat intermittent and unexpected failure of the Class Vehicle's Display Screen.

31.    In practice, the Display Defect makes the Class Vehicles *more dangerous*, not safer, because the Display Screen regularly and unexpectedly malfunctions where, while the Class Vehicles are in motion, the Display Screen (1) dims or goes dark by itself, or (2) freezes, or (3) goes into full bright mode blinding the driver during night time, causing distraction to the driver, and rendering the Infotainment Features inoperable.

---

[9] *Id.*

[10] *See* https://honda.com/operations (last visited September 20, 2019); *see* https://www.honda.com/-/media/Honda-Homepage/PDF/Honda_2017_Digital_FactBook.pdf (last visited September 20, 2019).

32.    Purchasers and lessees of the Class Vehicles have experienced the Display Defect.  Complaints filed by consumers with the National Highway Traffic Safety Administration ("NHTSA") demonstrate that the defect is not only widespread and dangerous, but that it manifests without warning.

33.    The complaints also indicate Honda's awareness of the Display Defect, since, as evidenced below, Class Members have taken their Class Vehicles to Honda authorized dealers for service after experiencing the Display Defect.

34.    Honda dealerships are required by Honda's policies to report customer complaints to Honda by filling out Field Technical Reports, or similar documents, including reports about the Display Defect.

35.    Such reports were compiled and catalogued by Honda's engineering personnel.

36.    Accordingly, Honda was on actual notice of hundreds, perhaps thousands, of consumers nationwide complaining about the Display Defect before any of the Plaintiffs bought their cars.

37.    In addition, Honda owners and lessees made complaints about the Display Defect to the NHTSA  (Safercar.gov, Search for Complaints (September 20, 2019),  http://www-odi.nhtsa.dot.gov/owners/SearchSafetyIssues/)  (spelling and grammatical issues in original):

- 12/05/2017: CENTER CONSOLE / INFOTAINMENT SYSTEM WILL NOT DIM AT NIGHT, NOR CAN IT BE ADJUSTED. IT STAYS AT

9

MAXIMUM BRIGHTNESS. THE CONSOLE DISPLAYS LIGHT EVEN
WHEN OFF AND ADJUSTING THE VOLUME KNOB TURNS IT BACK
ON. IT ALSO MAY SPONTANEOUSLY COME BACK ON WHEN OFF.
ONCE THE ISSUE APPEARED, IT COULD NOT BE RESOLVED WITH
A REBOOT OR HARD RESET. HAVING A BRIGHT LIGHT SOURCE
CLOSE TO THE DRIVER AT NIGHT IN A DISTRACTION.

- 12/31/2017: AUDIO HEAD UNIT (7" LED PANEL ON EX-L) ON
DASHBOARD DOES NOT DIM AT NIGHT. WHEN YOU TRY AND
MOVE THE DIMMER SLIDER ON THE UNIT, IT TRIES TO DIM,
THAN GOES BACK TO FULL BRIGHTNESS. THE DEALER HAS
TRIED TO FIX THIS FOR OVER A YEAR, AND IT'S STILL NOT
FIXED. DOING A QUICK GOOGLE SEARCH SHOWS MANY OTHERS
HAVING THE SAME PROBLEM. THIS IS A SAFETY ISSUE BECAUSE
IT'S TOO BRIGHT AT NIGHT AND AFFECTS/INTERFERES WITH
NIGHT DRIVING ESPECIALLY WHEN MAKING RIGHT HAND
TURNS BY CREATING A BLINDING CONDITION.

- 04/28/2018: THE DISPLAY IN MY 2017 HONDA CR V EX WILL
START BEEPING AT RANDOM AND THE BRIGHTNESS WILL
START GOING UP AND DOWN BY ITSELF. IT IS VERY
DISTRACTING. I HAVE SEEN OTHERS COMPLAIN OF THE EXACT
SAME PROBLEM, BUT I CALLED HONDA AND THEY SAID THAT
DON'T HAVE A FIX. THIS HAPPENS WHILE DRIVING OR WHILE
STATIONARY.

- 05/11/2018: THE DISPLAY IN THE MIDDLE GOES BLANK WHILE I
AM DRIVING A LOT. LAST TIME I WAS BACKING OUT WHEN IT
DID WHICH CAUSE MY CAR TO HAVE SERIOUS SCRATCHES ON
IT. AT THE SAME TIME THE BACK UP SEEMED NOT TO BE
WORKING EITHER.

- 08/04/2018: THE INFOTAINMENT DISPLAY WILL RANDOMLY
TURN OFF WHILE DRIVING. AUDIO CONTINUES TO PLAY
WITHOUT DISPLAY. PRESSING THE HOME BUTTON SOMETIMES
RESOLVE THE ISSUE, BUT SOMETIME IT REQUIRES TO HAVE THE
VEHICLE COMPLETELY TURNED-OFF TO GET THE DISPLAY

BACK.

- 10/01/2018: ON 08-10-2018 AFTER JUST GETTING ONTO THE FREEWAY ON THE WAY TO A MEETING, THE AUDIO/INFORMATION SCREEN (INFOTAINMENT SCREEN) WENT INTO MALFUNCTION. IT WAS TURNING ITSELF ON AND OFF, AND BEEPING. THERE WAS NO WAY TO TURN THE SCREEN OFF AND NO WAY TO SILENCE THE BEEPING. THE MALFUNCTION CONTINUED NON-STOP UNTIL THE VEHICLE WAS TURNED OFF. THIS CAUSED AN EXTREME STATE OF DISTRACTED-DRIVER WHILE ON THE FREEWAY WITH MANY OTHER AUTOMOBILES AROUND.

- 10/05/2018: THERE HAVE BEEN NUMEROUS TIMES AT STARTUP WHEN THE CENTRAL DISPLAY SCREEN FREEZES, REMAINS BLACK, DENYING NAVIGATION ASSISTANCE AMONG OTHER OPTIONS. IT APPEARS THE ONLY WAY TO CORRECT THIS IS TO RESTART THE VEHICLE.

- 10/09/2018:  IN ADDITION THE DISPLAY SCREEN (RADIO ETC.) DOES NOT DIM. IT STAYS FULL BRIGHTNESS EVEN WITH ADJUSTING IT. HONDA HAD TO FIX WHEN VEHICLE WAS BRAND NEW AFTER I HAD TO FIGHT WITH THEM THAT THIS IS AN ISSUE. THE SCREEN BLINDS ME AT NIGHT BECAUSE IT IS VERY BRIGHT SO YOU CAN'T REALLY SEE THE ROAD. THIS STAYS BRIGHT STOPPED OR MOVING.

- 10/18/2018: PURCHASED THIS CAR FROM KEATING HONDA IN CONROE, TX. SINCE DAY 1 I HAVE HAD ISSUES WITH MY LCD SCREEN THAT CONTROLS THE AUDIO AND CLIMATE. ABOUT MID SEPTEMBER I STARTED HAVING ISSUES WITH IT SHUTTING OFF ALONG WITH THE LCD SCREEN BEHIND THE STEERING WHEEL THAT SHOWS HOW FAST I'M GOING. DEALERSHIP AWARE BUT HAD ISSUES WITH GETTING LOANER SO UNABLE TO DROP OFF FOR REPAIR. THE SCREEN WOULD FLICKER AND SHUT OFF WHILE DRIVING OR "AUDIO ISN'T RESPONDING" ERROR SHOWS UP AND BOTH LCD SCREENS GO OUT WHILE

11

DRIVING. I WOULD START THE CAR AND WOULD RECEIVE AN ERROR MESSAGE LIKE "ANTI THEFT SYSTEM: THIS SYSTEM HAS LOST POWER. PRESS THE POWER KEY FOR MORE THAN TWO SECONDS TO ENABLE THE SYSTEM" ... PLEASE FIX YOUR SHIT! I WAS GIVEN A WARNING IN CONROE BECAUSE I WAS SPEEDING AND UNAWARE OF MY SPEED DUE TO THIS ISSUE AND IT SEEMS TO BE A DAILY PROBLEM FOR ME.

- 11/06/2018: I HAVE BEEN HAVING ISSUES WITH INFOTAINMENT SCREEN/SYSTEM. THE SYSTEM FREEZES AND SOMETIMES GOES BLACK AND WON'T RESPOND TO TOUCHES AND OR INSTRUCTIONS. THE CAR HAS BEEN TO THE DEALER SEVERAL TIMES WITH NO PERMANENT FIX.

- 11/25/2018: INFOTAINMENT SCREEN WILL RANDOMLY FLASH, DIM AND BEEP. THIS HAS CAUSED SEVERAL SAFETY ISSUES INCLUDING HIGH LEVEL OF DISTRACTION AND FAILURE OF THE NAVIGATION SYSTEM AT ALL THE WRONG TIMES. THIS HAPPENS RANDOMLY WHEN THE VEHICLE IS IN MOTION OR STOPPED. THE PROBLEM HAS BEEN REPORTED TO THE DEALER AND THEY HAVE FAILED TO FIND A SOLUTION. THEY CLAIM NO ONE ELSE HAS REPORTED SIMILAR PROBLEMS. THIS IS LAUGHABLE DUE TO ALL OF THE ONLINE COMPLAINTS AND YOUTUBE VIDEOS DOCUMENTING THE SAME PROBLEM. THEY HAVE REFUSED TO ATTEMPT A REPAIR OR REPLACEMENT OF AFFECTED DEFECTED COMPONENTS.

- 11/28/2018: WHILE DRIVING THE AUDIO SYSTEM STARTS BEEPING, THE SCREEN FLASHES AND IT MAKES RANDOM PHONE CALLS. I TOOK IT TO THE DEALER AND WAS TOLD THAT THEY DID NOT HAVE A FIX FOR THIS PROBLEM. I AM AFRAID THAT THIS DISTRACTION COULD CAUSE AN ACCIDENT. I LOOKED ONLINE TO FIND OTHER OWNERS HAD THE SAME PROBLEM. THIS HAPPENS ON CITY STREETS ON THE HIGHWAY AND WHILE STATIONARY. I BELIEVE THIS IS A MAJOR SAFETY HAZARD. THIS HAS HAPPENED SEVERAL TIMES.

12

- 12/10/2018: THE "INFOTAINMENT" OR NAVIGATION SCREEN MALFUNCTIONS AND TURNS ITSELF OFF. THIS RESULTS IN LOSS HEATING AND COOLING CONTROLS AS WELL AS OTHER IMPORTANT SAFETY FUNCTIONS.

- 01/14/2019: STALLING, LOSS OF ENGINE POWER, SMELL OF GAS IN THE PASSENGER COMPARTMENT, AUDIO DISPLAY ERRATIC, ALL WHILE CAR IS IN MOTION.

- 01/21/2019: THE INFORMATION SCREEN FOR AUDIO AND CLIMATE CONTROLS GO COMPLETELY OUT AND OR FUNCTION ERRATICALLY. THE FUNCTION ON THE DRIVING SAFETY SYSTEMS FOR ANTI BRAKE AND ANTI COLLISION ALSO FUNCTION ERRATICALLY. LOSING CRITICAL FUNCTIONS OF THE CAR WHILE THE CAR IS STILL OPERATING. I HAVE VIDEO AND MORE PHOTOS.

- 02/05/2019: TOUCH SCREEN DASHBOARD SOMETIMES GOES BLANK AND NON RESPONSIVE.

- 02/06/2019: THESE PROBLEMS HAVE BEEN GOING ON FOR THE PAST YEAR. MULTIMEDIA INFORMATION DISPLAY OCCASSIONALLY CHANGES BRIGHTNESS ON ITS OWN. IT ALSO SOMETIMES ACTIVATES ON SCREEN BUTTONS BY ITSELF. TODAY (2/6/2019), WHILE PLAYING AUDIO THROUGH THE CAR'S BLUETOOTH SYSTEM AND USING THE GPS, THE DISPLAY BLANKED OUT FOR 3 - 5 MINUTES. ALSO, THE BOTTOM HALF OF THE TACHOMETER DISPLAY, VIEWED THROUGH THE STEERING WHEEL, BLANKED OUT AND SHOWED A SPINNING WAIT CURSOR. AFTER THAT WAIT TIME, THE MULTIMEDIA DISPLAY TURNED BLACK. THEN ABOUT 30 SECONDS LATER, IT SHOWED THE HONDA SYMBOL. INDICATING THAT IS WAS BOOTING. I HAD BROUGHT THE VEHICLE TO MY DEALER LAST FRIDAY FOR MAINTENANCE WORK AND THEY HAD RESET THE MULTIMEDIA DISPLAY. IT SEEMS TOO SOON FOR PROBLEMS TO OCCUR YET AGAIN. ALL OF THESE PROBLEMS OCCURRED WHILE DRIVING. THE RANDOM BRIGHTNESS CHANGES ARE QUITE DANGEROUS

13

AT NIGHT TIME, WHEN MAX BRIGHTNESS OCCURS SUDDENLY. THE RANDOM ON SCREEN BUTTON ACTIVATIONS BECOME DANGEROUS DISTRACTIONS DURING DRIVING. I HAVE BEEN BRINGING THESE PROBLEMS TO MY DEALER'S ATTENTION FOR THE PAST YEAR, WHO SAID THEY ONLY JUST RECEIVED INFORMATION FROM HONDA (IN JANURARY 2019), SAYING THAT HONDA RECEIVED INFORMATION ON DISPLAY ISSUES AND ARE LOOKING INTO IT.

- 02/14/2019: DISPLAY FLICKERS AND YOU CAN'T DO ANYTHING ON THE DISPLAY.

- 02/28/2019: 2018 HONDA CR-V TOURING INFOTAINMENT SYSTEM FLICKERS, SCREEN TURNS ON AND OFF BY IT SELF AS WELL AS THE BRIGHTNESS OF THE SCREEN CHANGES BY IT SELF AND THE SCREEN STOPS RESPONDING, WEATHER YOU ARE LISTENING TO THE RADIO, GOD, ETC ALL JUST GETS INTERRUPTED BY THE ISSUE. HONDA WON'T FIX THE PROBLEM BECAUSE THEY CLAIM THERE IS NO SOLUTION TO THE PROBLEM. A TEMPORARY SOLUTION IS TO PULL OVER AND TURN OFF CAR AND BACK ON. VERY DISTRACTING WHILE DRIVING AND FRUSTRATING SPECIALLY SINCE THIS HAPPENS WHILE YOU ARE DRIVING L, THIS HAS HAPPEN ABOUT 5 TIMES IN THE PAST 2 MONTHS AND THE CAR WAS PURCHASED BRAND NEW 5 MONTHS AGO.

- 03/11/2019: WHILE DRIVING ON THE HIGHWAY AT NIGHT THE ENTIRE DISPLAY (HEAD UNIT) WITH THE MAP WENT OFF, CAME BACK ON AND THEN STARTED TO BEHAVE ERRATICALLY. I HEARD BEEPING SOUNDS AS IF SOMEONE WERE ACTUALLY TOUCHING THE SCREEN, THE BRIGHTNESS TURNED UP AND DOWN BY ITSELF AS WELL. I TOOK IT TO THE DEALER AND THEY TESTED IT AND SAID THEY COULD NOT REPRODUCE THE PROBLEM. I TOLD THEM THAT I HAD VIDEOS FROM WHEN IT HAPPENED TO CLEARLY ILLUSTRATE THE PROBLEM BUT THEY WERE NOT EVEN INTERESTED IN SEEING THE VIDEOS.

14

- 05/15/2019: THE CONTACT ALSO STATED THAT THE DISPLAY WOULD OCCASIONALLY FLASH ON AND OFF AND THEN GO BLANK.

- 05/17/2019: NAVIGATION/AUDIO ACTS UP -CHANGES SCREEN AND NONSTOP BEEPING. YOU NEED TO TURN THE ENGINE OFF TO STOP IT-RESET.

- 05/18/2019: DISPLAY CONSOLE BECOMES ERRATIC SHOWING DIFFERENT SCREENS, USUALLY STARTING FIRST WITH BRIGHTNESS LEVEL INDICATOR, AND THEN MOVING INTO DIFFERENT SCREENS. THE RATE THE SCREEN CHANGES INCREASES WITH TIME. DEALER STATED PREVIOUSLY THAT HONDA IS AWARE OF ISSUE AND THAT IT NEEDED A SOFTWARE UPDATE WHICH WAS IN BETA TESTING. THE INCIDENT RATE FOR THIS TO HAPPEN IS INCREASING. MY SECOND TRIP TO THE DEALERSHIP TODAY (I THINK A YEAR LATER) AND THEY STILL DO NOT HAVE A FIX. TO STOP THE CASCADE, YOU HAVE TO STOP THE CAR AND TURN IT OFF. IT IS A SIGNIFICANT DISTRACTION WHEN DRIVING AND IS UNPREDICTABLE.

- 05/24/2019: VIDEO OR NAVIGATION SCREEN WILL NOT DIM AND BLINDS DRIVER WHEN DRIVING AFTER DARK.

- 05/25/2019: WHILE DRIVING MY 2018 CRV-EX THE DASHBOARD INFO DISPLAY WILL RANDOMLY ADJUST BRIGHTNESS AND TURN IT ON/OFF. THE ONLY WAY TO STOP IT IT IS TO PULL OVER AND RESTART THE CAR. VERY DANGEROUS. WILL DO IT TWICE IN ONE DAY AND THEN NOT HAPPEN FOR SEVERAL DAYS.

- 05/28/2019: RADIO SCREEN RANDOMLY STARTS ADJUSTING ITS BRIGHTNESS. THE FIRST TIME THIS HAPPENED WAS 4/32/19, BUT IT HAS HAPPENED TO ME MULTIPLE TIMES SINCE THEN ALL WHILE DRIVING AND THERE IS NOTHING I COULD DO TO MAKE IT STOP OTHER THEN RESTARTING THE CAR. IT IS VERY DISTRACTING BECAUSE IT IS CONSTANTLY BEEPING WHILE IT

15

IS TRYING TO MAKE THIS ADJUSTMENT. I TRIED TURNING THE RADIO OFF, THIS DID NOT HELP. I WAS TOLD BY THE HONDA DEALERSHIP TO HIT THE DIM BUTTON ON THE SCREEN, BUT THIS DID NOT WORK EITHER. THE ONLY WAY THAT I HAVE BEEN ABLE TO RESOLVE THIS IS TO PULL OFF THE HIGHWAY/ROAD TURN THE CAR OFF AND BACK ON.

- 05/30/2019: NUMEROUS TIMES WHILE DRIVING, THE VEHICLE INFOTAINMENT DISPLAY RANDOMLY CHANGES BRIGHTNESS AND BEGINS FLICKERING AND CYCLING THROUGH SCREENS WHILE BEEPING. THIS OCCURS DURING BOTH DAY AND NIGHTTIME DRIVING, AND ON BOTH SHORT AND LONG TRIPS. THE ONLY WAY TO STOP IT IS TO TURN OFF THE VEHICLE OR DO A "HARD RESET" WITH THE BATTERY. THIS IS VERY DISTRACTING TO THE DRIVER. HONDA IS AWARE OF THIS SIGNIFICANT DEFECT AND HAS NO FIX FOR IT.

- 05/30/2019: RANDOM TIMES WHILE DRIVING THE INFOTAINMENT SCREEN RANDOMLY STARTS FLASHING AND BEEPING. WITH THE BRIGHTNESS CONTROL BAR POPPING UP AT THE BOTTOM OF THE SCREEN. THIS IS VERY DISTRACTING TO THE DRIVER WHILE OPERATING THE VEHICLE. THIS HAS HAPPENED THREE TIME WHILE THE VEHICLE WAS IN MOTION ON AT HIGHWAY SPEEDS AND WHILE DRIVING IN TRAFFIC. THE ONLY WAY TO STOP THIS IS TO TURN THE CAR OFF. THIS IS A BIG SAFTEY ISSUE FOR SAFE OPERATION OF THE VEHICLE AND IT WILL CAUSE AN ACCIDENT FOR SOMEONE. IT SEEMS TO HAPPEN RANDOMLY I BELIVE IT MAY HAPPEN WHEN THE NAVIGATION SYSTEM IS ACTIVATED AND THE CAR HAS AN ANDROID PHONE ATTACHED HOWEVER I AM UNABLE TO REPLICATE IT. IT HAS HAPPENED 4 TIMES. MY VEHICLE HAS 8000 MILES ON IT. ADDITIONALLY THERE ARE REPORT ON THE INTERNET THAT THIS HAS HAPPEND TO OTHER DRIVERS AS WELL. I REPORTED THIS BY TELEPHONE TO CUSTOMER SERVICE AT HONDA AS WELL 0N 05/30/2019.

16

- 06/02/2019: HONDA CRV DISPLAY ISSUES .THE DISPLAY STARTS FLASHING ON ITS OWN AND EVEN MAKES CALLS SOMETIMES . ALSO NO AMOUNT OF RESET WORKS UNLESS YOU STOP AND START THE CAR AGAIN . ALSO AFTER SHUTTING DOWN THE CAR A WEIRD NOISE KEEPS ON COMING FROM DISPLAY .THIS IS A NEW HONDA CR-V 2019 EXL MODEL THIS IS A HUGE INCONVENIENCE AND SAFETY ISSUE AS WE LOSE NAVIGATION IN BETWEEN AND IT'S ALWAYS NOT POSSIBLE TO PULL THE CAR ASIDE AND RESTART IT.

- 06/04/2019: THE SCREEN GOES BLACK AND I HAVE TO TURN THE CAR OFF AND THEN ON TO FIX THE PROBLEMS.

- 06/06/2019: TWICE NOW THE CAR WHEN IN LANE DEPARTURE HAS SLAMMED ON THE BREAKS. YESTERDAY THERE WAS A CAR BEHIND ME WHO HAD TO SWERVE TO AVOID REAR ENDING ME. I HAVE COMPLAINED TO HONDA AND THEY BASICALLY WILL NOT ACKNOWLEDGE ME. ELECTRONICALY THERE ARE OTHER ISSUES THE SCREEN GOES BLACK AND FLASHES CONSISTENTLY AND ONLY WILL RESOLVE WHEN I TURN THE CAR OFF AND RESTART. THE CAR IS UNSAFE TO DRIVE SO I AM NOW WITHOUT A CAR.

- 06/06/2019: THERE ARE RECURRING PROBLEMS WITH THE INFOTAINMENT SYSTEM DISPLAY: 1. NUMEROUS TIMES THE DISPLAY HAS GONE FULL FREAK-OUT WHILE THE CAR WAS IN MOTION. THE DISPLAY TURNS ITSELF ON AND OFF, ATTEMPTS TO ADJUST ITS OWN BRIGHTNESS AND REPEATEDLY BEEPS. THE ONLY WAY TO STOP THE MADNESS IS TO PULL OVER AND SHUT THE CAR OFF. THIS IS A TOTALLY UNCOOL THING TO HAPPEN WHEN ONE IS TRYING TO PAY ATTENTION TO THE TRAFFIC AROUND THEM. PLEASE ALSO REFERENCE NHTSA COMPLAINT #11132814 FOR THIS SAME VEHICLE. 2. EVEN THOUGH THE TOUCH SCREEN SENSITIVITY IS SET THE HIGHEST LEVEL, SOMETIMES YOU MUST PRESS THE "CYBER BUTTONS" REPEATEDLY BEFORE THE UNIT REGISTERS THAT YOU HAVE

17

PRESSED A BUTTON. WHILE I AM MOTORING DOWN THE ROAD PRESSING FAUX BUTTONS 10-15 TIMES TO TRY TO GET THE UNIT TO DO SOMETHING GUESS WHERE MY EYES ARE NOT…YEAH, ON THE ROAD IN FRONT OF ME WHERE MY EYES SHOULD BE PAYING ATTENTION. THE MANUFACTURER STATES THAT MY INFOTAINMENT SYSTEM DISPLAY/CONTROL UNIT IS WORKING PER SPEC.

- 06/11/2019: CENTRAL DISPLAY FLICKERS BRIGHT TO DIM AND FREEZES. DISPLAY IS NOW STUCK ON HI BRIGHTNESS. BRIGHTNESS CAUSES SAFETY ISSUE WHILE DRIVING AT NIGHT. HONDA OF AMERICA SAYS IT IS A KNOWN ISSUE BUT DOES NOT HAVE A FIX. HAS BEEN 4 MONTHS AND NO RESOLUTION AS OF YET.

- 06/27/2019: THE NAVIGATION/INFOTAINMENT DISPLAY WORKS INTERMITTENTLY WHILE DRIVING THE VEHICLE, IT BECOMES UNUSABLE AND ALSO JUST BLACKS OUT SO IF YOU ARE USING THE NAVIGATION WHILE DRIVING IT BECOMES INOPERABLE AND THE ONLY WAY TO CORRECT IT IS TO PULL OVER TURN THE CAR OFF AND RESTART IT WHICH IS DANGEROUS. HONDA HAS STATED THAT THEY ARE AWARE OF THE PROBLEM BUT HAVE NO SOLUTION YET.

- 07/23/2019: INFOTAINMENT SCREEN WILL SOMETIMES JUST START MAKING BEEPING NOISES AS IF YOU ARE PUSHING BUTTONS, WHILE AT THE SAME TIME THE SCREEN GOES DARK, AND OR THE SCREEN BRIGHTNESS OPTION COMES ON TO THE SCREEN. DEALER SAYS ITS A KNOWN PROBLEM BUT I DON'T SEE IT LISTED ANYWHERE. UNSAFE AND VERY DISTRACTING. NOT SURE IF THE BACK-UP CAMERA WILL STILL WORK BECAUSE THE SYSTEM STARTED UP AGAIN AND IS NOW WORKING. VEHICLE WAS IN MOTION AND DIDN'T RESET UNTIL I TURNED THE CAR OFF AND BACK ON AGAIN.

- 08/06/2019: MY CONSOLE SCREEN HAS GONE BLACK AND DOES NOT WORK.

18

- 08/10/2019: THE VEHICLE BRIGHTNESS CONTROL ON THE CENTER SCREEN BEEPS AND FLASHES AT RANDOM TIMES. THE BEEPING ALONE IS VERY DISTRACTING. THE SCREEN OFTEN GOES DARK. IT'S NECESSARY TO RESTART THE VEHICLE IN ORDER TO "RESET" THE DISPLAY, A POSSIBLY DANGEROUS SITUATION ON THE HIGHWAY. VEHICLE IS TYPICALLY IN MOTION EACH TIME THIS HAS OCCURRED ON VARIOUS ROADWAYS. THIS SITUATION WITH THE DISPLAY HAS REOCCURRED APPROXIMATELY TEN TIMES THUS FAR.

- 08/15/2019: THE TOUCHSCREEN IS HORRIBLE. DELAYED RESPONSE OFTEN WHEN TOUCHING ANY OF THE FEATURES LIKE AUDIO, CHANGING PRESET STATIONS ON THE RADIO ETC... FREEZES UP OFTEN AND THE "BRIGHTNESS" FEATURE WOULD APPEAR ON THE SCREEN BY ITSELF AND THE ONLY WAY TO GET RIDE OF IT IS TO TURN THE ENGINE OFF AND RESTART THE ENGINE. I HAVE NUMEROUS VIDEOS OF THE ISSUE. COMPLAINED TO DEALERSHIP EVEN BOUGHT IT IN TO HAVE IT LOOKED AT WHEN THE ISSUE IS HAPPENING SO THEY CAN SEE IT REALTIME AND TROUBLESHOOT. UNFORTUNATELY THEY WERE NOT ABLE TO DIAGNOSE THE ISSUE THE ONLY RESOLUTION WAS TO DO A FACTORY RESET OF THE TOUCHSCREEN. I AM STILL HAVING ISSUES. THE DEALERSHIP RECOMMEND ME TO CONTACT HONDA DIRECTLY TO REPORT ISSUE. THEY CAN'T REPLACE THE TOUCH SCREEN WITHOUT HONDA CORPORATE OFFICE APPROVING.

- 08/24/2019: WHILE DRIVING MY 2017 CRV, THE SCREEN/RADIO WILL FREEZE. I CAN'T TURN OFF THE RADIO, CHANGE THE SOURCE OR CHANNEL. THERE IS NO SOUND. AFTER THE CAR IS OFF FOR SEVERAL MINUTES AND RESTARTED THE SCREEN/RADIO WORKS NORMALLY.

- 08/26/2019: I AM HAVING THE SAME PROBLEM THE HONDA PILOT IS HAVING, MY INFOTAINMENT/RADIO HAS NOT WORKED SINCE I BOUGHT THE CAR ON MARCH 1ST. IT DOES NOT CONNECT TO

19

APPLE CAR PLAY AND THE SCREEN SUDDENLY JUST GOES BLACK. IT PLAYS PANDORA SPORADICALLY BUT NEVER WORKS CONSISTENTLY.

38.    In addition, many purchasers and lessees of the Class Vehicles complained about the Display Defect on various public forums.  The following are a few of the many complaints concerning the Class Vehicles that are publicly reported. In many instances, the complaints also reveal that Honda, through its network of dealers and repair technicians, was well aware of the Display Defect:

**2017 Model Year:**[11]

- 12/01/2017: Every once in a while, say a few times a month. the brightness control will come up by itself. It beeps, and brings up the brightness settings as if I touched it. Then it goes off, and comes back again, beeping and flashing incessantly. It's as if a kid is messing around and touching the brightness button over and over. The only way to stop it is to pull over and turn off the engine. Resetting by holding down the volume button doesn't work. It is SO ANNOYING! Especially if you're on the freeway and can't fix it right away.

- 12/12/2017: Audio system was automatically restarted once. Sometimes the brightness of the audio display screen automatically adjusts the brightness to increase or decrease while beeping. It also changes from day to night modes on broad day light. I had this happening several times I lost count of! Took it to the dealer at least 3 times for the same issue but they weren't able to figure out what's the issue or could not able to see the issue happening. Once they told automatic headlights can cause it. When it happens next time I've switched from Auto to Off/On positions. But it did not change anything

- 12/03/2018: Same as the first complaint. Like a kid repeatedly messing with

---

[11] https://www.carcomplaints.com/Honda/CR-V/2017/accessories-interior/brightness_control_beeps_and_flashes.shtml (last visited September 23, 2019) (spelling and grammar mistakes remain as found in the original).

the brightness controls on the center display unit. Annoying, and there is no near-term solve for it. Can really pose a problem if you become distracted by it while driving highway speeds.

- 12/17/2018: The brightness screen suddenly comes on and won't go off; it flashes, it beeps, the control screen (for the radio, gps, climate, etc.) will not work while this is happening. Although this is my first report, this problem has occurred 4 or 5 times in the 22 months that we've had the car. The only way to resolve the issue is to pull over and turn off the car. Apparently, the re-start must reboot the computer issue that is causing the glitch.

We spoke with the Honda service manager today; he'd never heard of anything like this. Told us we'd have to leave the car for a couple of days so he could work with Honda tech support to figure out what the problem is. We didn't leave the car, as that is incredibly inconvenient for us. Next time it happens, I intend to drive directly to the dealership and let them see it for themselves.

Update from Jan 16, 2019: So, the day after talking to a service tech about the problem, it happened again. We immediately drove to the dealership so a tech could see it for himself. This tech said he'd experienced this problem with another customer and Honda had replaced the entire "command console", which is a $2000 part. They gave us a loaner and kept our car for 6 days; the Honda super computer would "talk" to our car to see what the issue was and what to do about it. Got a call yesterday; Honda is blaming the issue on Panasonic, who manufactures the "command console"; Honda won't do anything about the issue until Panasonic comes up with a fix. So, we are waiting/hoping for a recall at some point. We've bought Hondas since 1979 (except for one Hyundai), and really thought better of them than this. This isn't every single 2017 CRV that has this issue, obviously. Honda should suck it up and replace the console.

- 03/18/2019: Besides having the issue of the car not heating up, I now have an issue with my brand new cars audio. The brightness/contrast screen pops up at random times beeping the whole time and flashing on and off without any way to stop it other than pulling over and turning the car off. I bought an extended warranty just for this and there is no fix. This is super annoying!

21

**2018 Model Year:**[12]

- 10/01/2018: My 2018 CR-V is repeatedly have central console issues while driving that is causing a big distraction and high risk of a crash. Brightness function is constantly changing to high, low and off while making noises and being unable to stop the issue until car is turned off. This is happening many times since the first year of use, reported to the Honda dealer where i bought id and their response is Honda has not come with a solution to fix it yet, and replacing the console is not an option because the problem wont be solved I am stuck with this issue for almost a year now and I don't know what to do!

- 10/01/2018: Purchased a new 2018 Honda CRV Touring in March of 2018. Five months into my purchase the media center started to glitch and the touch screen blacks out then takes no input from me. The volume will go from low to high, the screen brightness will go from low to high, the menu will randomly switch between different menu options and sometimes it will go completely black and freeze. I cannot use any of the functionality. I've been to two different Honda Dealership service centers and they've "reset" the unit multiple times and even replaced the "unit". The first "replaced the unit" repair lasted only until I was about to drive off the lot and the issue started again! Before I even drove off the lot! I left the vehicle again, they "reset" and again I pick up my vehicle, same day--issue occurs again. I've escalated to the management staff at the original purchase dealership as well as Corporate Honda only to be told there is "currently no fix."

- 04/14/2019: This is an ongoing problem that keeps getting worse. About 3-4 months after I purchased the CRV, it was changing displays and brightness of the screen, but not that often. Now it is happening every day. I have only owned this vehicle for about 14 months. If I drive it for more than 25-30 minutes, it will look like the CRV is haunted. It's like someone is pressing the "Brightness" button to bright, then night, then off. Then the display settings change. Sometimes the stations will change on their own. It beeps all the time. It starts off slow and then speeds up to a constant changing of

---

[12] https://www.carcomplaints.com/Honda/CR-V/2018/accessories-interior/infotainment_glitches.shtml and https://www.carcomplaints.com/Honda/CR-V/2018/accessories-interior/panasonic_console_defective.shtml (last visited September 23, 2019) (spelling and grammar mistakes remain as found in the original).

settings... BEEP, BEEP,BEEP,BEEP,BEEP... It's never ending! Rebooting the system while driving doesn't work. As it gets worse, it does't matter how much I touch/pound on the screen. It loses its touch sensitivity.

I brought it to the dealer to have it fixed. They said that Honda is aware of the problem and they do not have a fix for it. They suggested that I keep the brightness setting set to night all the time, but this does not work. The only fix seems to be shutting the car off and then turning it back on and then I'm good for another 25-30 minutes.

**2019 Model Year:**[13]

- 04/01/2019: Since I have owned the car. I have had problems at least once per week (i.e touch screen and it goes black; volume stops when navigating; volume control quits working, screen gets real dim,etc) To resolve the problem. I have to stop the car and restart it or do a reset to original values. Dealer claims that problem is with software and that Honda is attempting to come up with the corrections. It has been 4 months with no replacement or software updates. Now the Lane assit quit working and I am bringing it in AGAIN to the dealer

- 08/17/2019: "2019 CR-V INFOTAINMENT SCREEN WILL SOMETIMES JUST START MAKING BEEPING NOISES AS IF YOU ARE PUSHING BUTTONS, WHILE AT THE SAME TIME THE SCREEN GOES DARK, AND OR THE SCREEN BRIGHTNESS OPTION COMES ON TO THE SCREEN. RESTARTED ENGINE INFOTAINMENT WORKING FINE.

39.    On another public forum, www.crvownersclub.com, numerous Class Vehicle drivers complained about the Display Defect as early as summer of 2017.[14]

---

[13] https://www.carcomplaints.com/Honda/CR-V/2019/accessories-interior/infotainment_system_malfunction.shtml (last visited September 23, 2019) (spelling and grammar mistakes remain as found in the original).

[14] https://www.crvownersclub.com/threads/radio-display-randomly-dims-and-brightens.145521/ (last visited September 23, 2019).

40.    Since that initial post, dozens of other Class Vehicle drivers reported the same issue.[15]

41.    Therefore, the number and substance of the consumer complaints is sufficient to put Honda on notice that a serious safety defect is present in the Class Vehicles.

42.    But it is not only lack of repair that keeps owners of such Class Vehicles frustrated.    When the Display Screen malfunctions, it does so abruptly, without warning, while the Class Vehicles are in motion on a public roadway.

43.    The very system that was designed to keep drivers safe is in fact making them less safe through distraction.

44.    For example, on several occasions, the Display Screen went dark as Rifkin and Schwert were using the navigation function, causing them a great deal of distraction as they lost their navigation directions, and further causing them to pull over, shut off car, restart the car, and re-enter their destination into navigation.

C. **Honda's Knowledge of the Display Defect**

45.    Honda has had long standing knowledge of the Display Defect.    As discussed above, there exist a large number of customer complaints on the NHTSA Office of Defect Investigations ("ODI") website, www.safercar.gov, as well as other consumer forums addressing the Class Vehicles' Display Defect.

---

[15] See https://www.crvownersclub.com/threads/radio-display-randomly-dims-and-brightens.145521/ and https://www.crvownersclub.com/threads/touch-screen-problem.178233/ (last visited September 23, 2019).

46.    Federal law requires automakers like Honda to be in close contact with the NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

47.    Honda has a legal obligation to identify and report emerging safety-related defects to the NHTSA under the Early Warning Report requirements. *Id.*

48.    Honda tracks the NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing legal obligation to identify potential defects in their vehicles, including the Display Defect complaints. *Id.*

49.    Consistent with its legal duties identified above, and in addition to dealer reports made directly to Honda, Honda knew or should have known of the many complaints about the Display Screen logged by NHTSA ODI, and the content, consistency, and large number of those complaints that alerted, or should have alerted, Honda to the Display Defect.

50.    Furthermore, Honda admitted a defect with the Display Screen exists when on January 23, 2019, Honda issued a Tech Line Summary Article titled "Display Audio Screen Dims or Goes Dark by Itself."

51.    In the Tech Line Summary Article Honda said:

> "We're getting reports of the Display Audio screen dimming or going dark by itself. We're currently investigating this issue and

25

have traced its probable cause to a capacitive touch panel sensor issue.

At this time, there's no fix for this, so don't replace the center display unit. Current parts stock may have the same issue.

As a temporary measure, pressing the Day/Night icon will restore the screen. Be sure to pass this on to the service advisors so they can inform their customers."

52.   Notably, while Honda urged its dealer "to pass this on to the service advisors so they can inform their customers," there was no such urge or, let alone, instruction to pass the TLSA on to the dealers' sales departments to inform prospective Honda consumers that the Class Vehicles they were about to purchase or lease suffered from the Display Defect.

53.   Although Honda knew of such Display Screen faults and limitations at least as of January 23, 2019, when it published to its dealers the TLSA (and sooner as Honda gathered information and data to prepare such publication), Honda has not disclosed such Display Screen faults and limitations to consumers and to Plaintiffs before they purchased their vehicles.

54.   Thus, Honda's issuance of the TLSA suggests a gathering of data and information regarding the Display Defect and establishes Honda's superior knowledge of a defect that would not be readily available to the Plaintiffs and other consumers.

CLASS ACTION COMPLAINT

**D. Honda has Actively Concealed or Suppressed the Display Defect**

55.    While Honda has been fully aware of the Display Defect in the Class Vehicles at least since January 23, 2019, it actively concealed the existence and nature of the defect from Plaintiffs and Class Members at the time of purchase or lease.

56.    Specifically, Honda failed to disclose or actively concealed at and after the time of purchase or lease:

a. any and all known material defects or material nonconformity of the Class Vehicles, including the defects relating to the Display Screen;

b. that the Class Vehicles, including their Display Screens, were not in good in working order, were defective, and were not fit for their intended purposes; and

c. that the Class Vehicles and their Display Screens were defective, despite the fact that Honda learned of such defects through alarming failure rates, customer complaints, as well as through other internal sources, at least as early as January of 2019.

57.    Honda is, of course, currently aware that the Display Screen in the Class Vehicles is malfunctioning in record numbers. But other than instructing its dealers to tell Class Vehicle owners to press the Day/Night icon to restore the screen, which, as evidenced by Plaintiffs' experiences and experiences by numerous other Class

27

Vehicles drivers –does not restore the Display Screen functionality – Honda has no fix.

58.    Honda has never disclosed the Display Defect to consumers – through its dealerships or otherwise.  It has not even stopped selling CR-V vehicles with defective Display Screens; it continues to sell them – without including any warning – as both new vehicles and used vehicles.

59.    The Plaintiffs and members of the Class would not have purchased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, of the Display Defect in the Class Vehicles.

**E.  Honda's New Vehicle Limited Warranty**

60.    Prior to purchasing their vehicles, Plaintiffs relied upon Honda's representations of a New Vehicle Limited Warranty that accompanied the sale or lease of their vehicles, and such representations were material to Plaintiffs' decision to purchase or lease their vehicles.

61.    Specifically, each Class Vehicle sale or lease is accompanied with Honda's 3-year / 36,000-mile New Vehicle Limited Warranty.

62.    The terms of Honda's New Vehicle Limited Warranty are contained in the warranty booklet that Plaintiffs and all class members received at the time they purchased or leased the Class Vehicles.

63.    Honda's warranty booklet sets forth the terms of its New Vehicle Limited Warranty as follows:[16]

### General Warranty Provisions

The warranty coverages in this booklet are offered only to the owner or lessee of a 2017 Honda automobile. To be covered, the vehicle must be distributed by American Honda through the Honda Automobile Division, and sold or leased by a Honda automobile dealer in the United States, Puerto Rico, the U.S. Virgin Islands, Guam, and the Commonwealth of the Northern Mariana Islands.

* * *

### New Vehicle Limited Warranty

Your vehicle is covered for 3 years or 36,000 miles, whichever comes first. Some parts may have separate coverage under other warranties described in this book.

### Warranty Coverage

Honda will repair or replace any part that is defective in material or workmanship under normal use.

* * *

### How to Get Warranty Service

You should take your vehicle along with proof of the purchase date to a Honda automobile dealer during normal service hours.

---

[16] *See* http://owners.honda.com/Documentum/Warranty/Handbooks/AWL_02971_2017_Honda_Warranty _Basebook__KA__FINAL.pdf (last visited July 17, 2018).  Honda's New Vehicle Limited Warranty terms for the 2018 and 2019 Honda CR-V vehicles are substantially the same. *See* http://owners.honda.com/Documentum/Warranty/Handbooks/2018_Honda_Warranty_Basebook_A WL05251_FINAL.pdf; https://owners.honda.com/Documentum/Warranty/Handbooks/2019_Honda_Warranty_Basebook_A WL07531_Petrol_Hybrid_PHEV__SIS.pdf (last visited September 20, 2019).

64. The Song-Beverly Act requires every manufacturer to establish a repair facility in California to service the express warranty. Cal. Civ. Code § 1793.2(a).

65. Further, Honda's authorized dealers expressly assented to perform warranty repairs on the Class Vehicles, necessary to bring Honda in compliance with the Song-Beverly Act and in compliance with Honda's express warranty.

66. Honda controls execution of all warranty repairs by its dealers, as it provides training, materials, special tools, diagnostic software, and replacement parts to its dealers, and demands that the warranty repairs be performed in strict accordance with its repair guidelines, Technical Service Bulletins, Job's Aids, and other instructions.

67. Further, Honda requires its authorized dealers to submit detailed data regarding repairs.

68. In return, Honda pays its authorized dealers a monetary compensation for such warranty repairs.

69. Therefore, Honda's authorized dealers are its agents for purposes of vehicle repairs, and knowledge of a defect reported to any such dealer can be imputed to Honda.

**F. Allegations Applicable to Plaintiff Woo**

70. On or about January 12, 2019, Woo purchased a new 2018 Honda CR-V EX vehicle, Vehicle Identification Number 5J6RW1H57JA013104 (the "Woo Vehicle") from Wittmeier Honda in Chico, California, an authorized dealership of

30

Honda (hereafter "Wittmeier Honda"), primarily for personal, family, and household purposes.

71.    The Woo Vehicle came equipped with Infotainment Features accessible and operable via the Display Screen.

72.    At the time Woo purchased the Woo Vehicle, Wittmeier Honda made representations as to the Woo Vehicle's performance and quality and assured Woo that it was accompanied by Honda's New Vehicle Limited Warranty and was free from defects of workmanship.

73.    Thereafter, continuing malfunctions, defects, and problems have plagued the Woo Vehicle.

74.    On March 26, 2019, Woo called San Leandro Honda in San Leandro, California, an authorized Honda dealership (hereafter "San Leandro Honda"). Woo complained to Kevin Wong, a Service Advisor, that the Display Screen had unexpectedly switched its brightness setting, then went dark, and that the Display Screen continued that cycle rendering the Infotainment Features inoperable and uncontrollable. The Display Screen would then either resolve the issue itself of Woo had to stop the car and restart it to stop the issue. *See* Illustration 2 & 3, below.

CLASS ACTION COMPLAINT



Illustration 2



Illustration 3

75.    Kevin Wong told Woo that it was a known Display Defect, that Honda put out a TLSA for that defect, and that Honda had no fix for it.

76.    On April 3, 2019, Woo went to San Leandro Honda and complained to Jessica Heringer, a Service Advisor, that his vehicle continued to suffer from the Display Defect.

77.    Jessica Heringer told Woo that Honda had no fix for the Display Defect.

32

CLASS ACTION COMPLAINT

78.    On April 6, 2019, Woo brought his vehicle to Honda of Oakland in Oakland, California, an authorized Honda dealership (hereafter "Oakland Honda"), and complained about the Display Defect.

79.    Woo further complained that when he used the vehicle's smartphone integration feature, it caused his phone to go "haywire."

80.    Oakland Honda kept Woo's car for four (4) hours and attempted a repair through a system reset.

81.    Oakland Honda advised Woo that Honda was aware of the Display Defect, but Honda had no resolution at that time.

82.    The Woo Vehicle was ready for pick up the same day.

83.    On April 12, 2019, Woo called Honda Customer Relations and complained that his car continued to suffer from the Display Defect which Honda dealers failed to fix.

84.    Honda Customer Relations opened a claim number 09491569 and responded that Honda had no fix for the Display Defect and told Woo to check with Honda at a later date.

85.    On April 15, 2019, Woo called San Francisco Honda in San Francisco, California, an authorized Honda dealership (hereafter "San Francisco Honda"), and complained to Tyrone Pratt, Assistant Service Manager, that his car continued to suffer from the Display Defect.

86.    Tyrone Pratt told Woo that Honda still had no solution to the problem.

33

87.     On April 17, 2019, Woo called Anderson Honda in Palo Alto, California, an authorized Honda dealership (hereafter "Anderson Honda"), and complained to Diego Gonzales, a Service Advisor, that his car continued to suffer from the Display Defect.

88.     Diego Gonzales told Woo that Honda had no fix for the Display Defect.

89.     Honda's failure to repair the ongoing Display Defect in the Woo Vehicle caused Woo great frustration and aggravation, especially since the defect and unexpected loss of Infotainment Features caused dangerous distracted driving.

90.     In addition, to stop the Display Screen reboot cycle and regain control of the Infotainment Features, Woo had to stop driving his vehicle and restart its engine, since pressing the Day/Night icon, as called for by Honda's TLSA, failed to restore the Display Screen functionality.

91.     On April 25, 2019, Woo, through his counsel, sent a letter to Honda advising that, despite Woo's numerous attempts to obtain a repair, the Woo Vehicle's Display Screen was still defective.

92.     In response, Honda said "[o]ur records indicate that the customer's concerns have been reviewed and addressed per the terms of Honda's New Vehicle Limited Warranty" and did not offer to repair the Woo Vehicle.

93.     The defects experienced by Woo substantially impair the use, value, and safety of the Woo Vehicle.

34

94. Woo could not reasonably have discovered said nonconformities in the vehicle prior to his acceptance of the Woo Vehicle.

## G. Allegations Applicable to Plaintiff Rifkin

95. On or about April 6, 2017, Rifkin purchased a new 2017 Honda CR-V EX vehicle, Vehicle Identification Number 2HKRW2H57HH622675 (the "Rifkin Vehicle") from Mile High Honda in Denver, Colorado, an authorized Honda dealership (hereafter "Mile High Honda"), primarily for personal, family, and household purposes.

96. The Rifkin Vehicle came with Infotainment Features accessible and operable via the Display Screen.

97. At the time Rifkin purchased the Rifkin Vehicle, Mile High Honda made representations as to the Rifkin Vehicle's performance and quality and assured Rifkin that it was accompanied by Honda's New Vehicle Limited Warranty and was free from defects of workmanship.

98. Thereafter, continuing malfunctions, defects, and problems plagued the Rifkin Vehicle.

99. On July 18, 2018, Rifkin brought his vehicle for repair to Mile High Honda and complained that, as he was driving, the Display Screen unexpectedly switched to a brightness setting and then went dark, and that the Display Screen continued through this cycle, rendering the Infotainment Features inoperable and

35

1
2
3

uncontrollable.   As with Woo, to stop the cycling, Rifkin had to stop his car and restart his engine. *See* Illustration 4.



Illustration 4

100.   Mile High Honda did not give Rifkin a work order for the July 18, 2018 visit nor did it repair the vehicle.

101.   On August 8, 2018, Rifkin returned to Mile High Honda and complained that the Display Defect continued and was occurring every three days, and the only way to stop it was to turn the car off.

102.   Mile High Honda verified Rifkin's complaint and attempted a repair by replacing the entire Display Screen.

103.   The Rifkin Vehicle was ready for pick up on August 10, 2018.

104.   On November 8, 2018, Rifkin brought his vehicle to Mile High Honda and complained that it continued to suffer from the Display Defect.

105.   In response, Mile High Honda attempted a repair by performing a hard system reset.

106.   In addition, Mile High Honda called Honda's techline for repair assistance and was told that as of October 29, 2018, the Display Defect was under investigation and that the Display Screen should not be replaced until further notice.

107.   On March 12, 2019, Rifkin returned his car to Mile High Honda and complained that it continued to suffer from the Display Defect.

108.   In response, Mile High Honda told Rifkin that Honda had no fix for the Display Defect.

109.   On or about April 3, 2019, Rifkin called Honda Customer Relations and complained that his vehicle continued to suffer from the Display Defect which Honda's dealer failed to fix.

110.   Honda Customer Relations representative opened claim number 09439380.  The representative did not advise how, when, or if the Display Screen defect could be fixed.

111.   Honda's failure to repair the ongoing Display Defect in the Rifkin Vehicle caused Rifkin great frustration and aggravation, especially since the defect and unexpected loss of Infotainment features caused dangerous and distracted driving.

112.   In addition, to stop the Display Screen reboot cycle and regain control of the Infotainment Features, Rifkin had to stop driving his car and restart its engine,

since pressing the Day/Night icon, as called for by Honda's TLSA, failed to restore the Display Screen functionality.

113.    Furthermore, on several occasions, the Display Screen went dark as Rifkin was using navigation, causing him to lose navigation directions entirely.   To temporarily stop the defect, Rifkin had to pull over, shut off and restart the car, and re-enter his destination into navigation.

114.    On April 29, 2019, Rifkin, through his counsel, sent a letter to Honda, advising it that, despite Rifkin's numerous attempts to obtain a repair, the Rifkin Vehicle's Display Screen was still defective.

115.    In response, Honda said "[o]ur records indicate that the customer's concerns have been reviewed per the terms of Honda's New Vehicle Limited Warranty" and did not offer to repair the Rifkin Vehicle.

116.    The defects experienced by Rifkin substantially impair the use, value, and safety of the Rifkin Vehicle.

117.    Rifkin could not reasonably have discovered said nonconformities in the vehicle prior to his acceptance of the Rifkin Vehicle.

## H. Allegations Applicable to Plaintiff Schwert

118.    On or about December 30, 2017, Schwert purchased a new 2018 Honda CR-V Touring vehicle, Vehicle Identification Number 7FARW1H91JE011109 (the "Schwert Vehicle") from Economy Honda Superstore in Chattanooga, Tennessee, an

authorized Honda dealership (hereafter "Economy Honda"), for his personal, family, and household purposes.

119.   The Schwert Vehicle came equipped with Infotainment Features accessible and operable via the Display Screen.

120.   At the time Schwert purchased the Schwert Vehicle, Economy Honda made representations as to the Schwert Vehicle's performance and quality and assured Schwert that it was accompanied by Honda's New Vehicle Limited Warranty and was free from defects of workmanship.

121.   Thereafter, continuing malfunctions, defects, and problems plagued the Schwert Vehicle.

122.   On July 16, 2018, Schwert brought his car for repair to Economy Honda and complained that at times, as he was driving, the Display Screen unexpectedly went dark, rendering Infotainment Features inoperable and uncontrollable.

123.   Economy Honda attempted a repair and shortly thereafter advised Schwert that his vehicle was ready for pick up.

124.   On August 27, 2018, Schwert returned his car to Economy Honda and complained that the Schwert Vehicle continued to suffer from the Display Defect.

125.   Economy Honda verified Schwert's complaint and advised Schwert that he would need to return his car for repair at a later time.

126.   On November 12, 2018, Schwert brought his car to Economy Honda again and complained that it continued to suffer from the Display Defect.

39

127. Economy Honda attempted a repair and shortly thereafter advised Schwert that his vehicle was ready for pick up.

128. On December 27, 2018, Schwert brought his vehicle to Economy Honda again and complained that it continued to suffer from the Display Defect.

129. In response, Economy Honda disconnected the vehicle's battery and performed a system reset.

130. In addition, Economy Honda told Schwert that Honda was aware of the Display Defect but had no fix for it.

131. On December 28, 2018, Schwert called Honda's customer service and complained about the Display Defect in his vehicle, to which Honda responded that it was aware of the issue but had no fix.

132. During that call, Schwert asked Honda why it was selling cars to unsuspecting consumers knowing that there were issues with the Display Screen, to which Honda advised its engineers were now working on a fix.

133. On January 22, 2019, Schwert, through his counsel, sent a letter to Honda, advising it that, despite Schwert's numerous attempts to obtain a repair, the Schwert Vehicle's Display Screen was defective.

134. Honda responded with a request to perform another repair of the Schwert Vehicle.

135. On March 5, 2019, Schwert brought his car to Economy Honda in response to Honda's request for an opportunity to repair the Display Defect.

40

136.   During that visit, Economy Honda attempted a repair by replacing the Display Screen.

137.   The Schwert Vehicle was ready for pick up on March 7, 2019.

138.   However, despite all the repairs, the Schwert Vehicle continues to suffer from the Display Defect where the Schwert Vehicle's Display Screen intermittently goes dark, or the Display Screen's buttons freeze, rendering radio, navigation, and other Infotainment Features inoperable, while the vehicle is in motion, causing Schwert great distraction and aggravation.

139.   In addition, to get the Display Screen to work and regain control of the Infotainment Features, Schwert repeatedly had to stop driving his vehicle and restart its engine.

140.   Furthermore, on several occasions, the Display Screen went dark as Schwert was using navigation, causing him to lose navigation directions, pull over, shut off car, restart the car, and re-enter his destination into navigation.

141.   The defects experienced by Schwert substantially impair the use, value, and safety of the Schwert Vehicle.

142.   Schwert could not reasonably have discovered said nonconformities in the vehicle prior to his acceptance of the Schwert Vehicle.

# CLASS ACTION ALLEGATIONS

## A. The Class

143.   Plaintiffs bring this case as a class action on behalf of a nationwide class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3).

> **Nationwide Class:** All persons or entities in the United States who bought or leased a Class Vehicle (the "Nationwide Class").

144.   Pursuant to Fed. R. Civ. P. 23(c)(5), Plaintiffs seek to represent the following state classes (and other states with substantially similar warranty laws) only in the event that the Court declines to certify the Nationwide Class:

> **California Class (and other States with substantially similar laws):** All persons or entities in the state of California who bought or leased a Class Vehicle (the "California Class")

> **Colorado Class (and other States with substantially similar laws):** All persons or entities in the state of Colorado who bought or leased a Class Vehicle (the "Colorado Class").

> **Tennessee Class (and other States with substantially similar laws):** All persons or entities in the state of Tennessee who bought or leased a Class Vehicle (the "Tennessee Class").

145.   Defendant and its employees or agents are excluded from the Class.

## B. Numerosity

146.   Upon information and belief, each of the Classes are so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiffs only through the

discovery process, Plaintiffs believe, and on that basis allege, that hundreds of thousands of Class Vehicles have been sold and leased in each of the States that are the subject of the Classes.

## C. Common Questions of Law and Fact

147. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. These questions include:

a. Whether the Class Vehicles were sold with defective Display Screen that causes such system to intermittently malfunction;

b. Whether Honda knew about the Display Defect but failed to disclose the problem and its consequences to its customers at the time of sale or lease;

c. Whether Honda breached express warranties and MMWA when it failed to repair the Display Defect;

d. Whether Honda breached implied warranties and MMWA when it sold vehicles that contain defective Display Screen;

e. Whether Honda violated the UCL;

f. Whether Honda violated the CLRA;

g. Whether Honda is liable for damages, and the amount of such damages;

43

h. Whether Honda should be required to disclose the existence of the defect; and

i. Whether Plaintiffs and class members are entitled to equitable relief including injunctive relief.

## D. Typicality

148. The Plaintiffs' claims are typical of the claims of the Classes since each Plaintiff purchased a defective Class Vehicle, as did each member of the Classes. Furthermore, Plaintiffs and all members of the Classes sustained economic injuries arising out of Defendant's wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

## E. Protecting the Interests of the Class Members

149. Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiffs nor their counsel has any interests which might cause them not to vigorously pursue this action.

## F. Proceeding Via Class Action is Superior and Advisable

150. A class action is the superior method for the fair and efficient adjudication of this controversy. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to

44

redress effectively the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.  Upon information and belief, members of the Classes can be readily identified and notified based on, inter alia, Defendant's vehicle identification numbers, warranty claims, registration records, and database of complaints.

151.   Defendant has acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final equitable relief with respect to the Classes as a whole.

## CHOICE OF LAW ALLEGATIONS

152.   It is appropriate to apply California law to the nationwide claims because California's interest in this litigation exceeds that of any other state. Honda does substantial business in California, its principal offices are located in California, and it maintains over 100 authorized dealerships in California – more than any other state.

153.   The conduct that forms the basis for each and every class member's claims against Honda emanated from Honda's headquarters in Torrance, California. Honda's marketing department, warranty department, customer affairs department,

and engineering and design analysis groups are all located in Torrance, California, and it is those departments which were responsible for the decision to conceal the Display Defect from Honda's customers and to systematically deny or fail to repair resulting nonconformities with the Display Screen.

154.   The State of California also has the greatest interest in applying its law to class members' claims. Its governmental interests include not only an interest in compensating resident consumers under its consumer protection laws, but also under the State's interest in using its laws to regulate a resident corporation and preserve a business climate free of deceptive practices.

155.   Based on the foregoing, such policies, practices, acts, and omissions giving rise to this action were developed in, and emanated from, Defendant's headquarters in Torrance, California.  As detailed above, Honda also came to know, or should have come to know, of the Display Defect through the activities of Honda divisions and affiliated entities located within California.  Accordingly, the State of California has the most significant relationship to this litigation and its law should govern.

## FIRST CAUSE OF ACTION
**Breach of Warranty Pursuant to the Magnusson-Moss Warranty Act,
15 U.S.C. §2301, *et seq.*
(On Behalf of the Nationwide Class or, in the Alternative, the State Classes)**

156.   The Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

46

157.   The Plaintiffs and each class member are a "consumer" as defined in 15 U.S.C. § 2301(3).

158.   Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

159.   The Class Vehicles are each a "consumer product" as defined in 15 U.S.C. § 2301(6).

160.   15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with the written and implied warranties.

161.   The Defendant's failure to repair the Class Vehicles' Display Screen within the applicable warranty period constitutes a breach of the written and implied warranties applicable to the Class Vehicles.

162.   Despite repeated demands, Defendant has failed to remedy the Class Vehicles' defects within a reasonable time, and/or a reasonable number of attempts, thereby breaching the written and implied warranties applicable to the Class Vehicles.

163.   Defendant's breaches of the written and implied warranties constitutes a breach of the Magnusson-Moss Warranty Act, 15 U.S.C. §2301, *et seq*.

164.   As a result of Defendant's breaches of the written and implied warranties, and Defendant's failure to remedy the same within a reasonable time, Plaintiffs and Class Members have suffered damages.

1
2
3
4

**NATIONWIDE OR CALIFORNIA CLASS**

**SECOND CAUSE OF ACTION**
**Breach of Express Warranty under Cal. Comm. Code § 2313**
**(On Behalf of the Nationwide Class or, in the Alternative, the State Classes)**

5
6
7

165.  Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

8
9
10
11
12
13

166.   In connection with the sale or lease of the Class Vehicles to Plaintiffs and Class Members, Defendant provided Plaintiffs and Class Members with a New Vehicle Limited Warranty, under which it agreed to repair original components found to be defective in material or workmanship under normal use and maintenance, including the Display Screen.

14
15
16
17
18

167.   Plaintiffs and Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles, and Defendant's warranties were part of the basis of the bargain.

19
20
21
22

168.   Defendant breached these express warranties in that the Class Vehicles suffer from the above-described defects with the Display Screen, which substantially impair the Class Vehicles' use, safety, and value to Plaintiffs and Class Members.

23
24
25
26

169. Plaintiffs and Class Members have given Defendant reasonable opportunities to cure said defects, but Defendant has been unable to do so within a reasonable time.

27
28

170.   As a result of said nonconformities, Plaintiffs and Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, comfortable, and efficient transportation.

171.   Plaintiffs and Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiffs' and Class Members' acceptance of the Class Vehicles.

172.   Plaintiffs and Class Members would not have purchased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that the Display Screen did not function as advertised and warranted.

173.   As a result of Defendant's breach of express warranties, Plaintiffs and Class Members have been damaged in an amount that is the difference between the value of Class Vehicles if they had possessed the qualities and attributes represented and the value of the Class Vehicles Plaintiffs and Class Members actually received.

### THIRD CAUSE OF ACTION
**Breach of Express Warranty Pursuant to Song-Beverly
Consumer Warranty Act – Cal. Civ. Code §§ 1793 and 1791.2, *et seq.*
(In the Alternative, on Behalf of California Class only)**

174.   Plaintiff Woo (Plaintiff for purposes of California Class Count) incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

49

175.   Woo and California Class Members are each a "buyer" as defined in Cal. Civ. Code § 1791(b).

176.   Defendant is a "manufacturer" as defined in Cal. Civ. Code § 1791(j).

177.   The Class Vehicles are each a "consumer good" as defined in Cal. Civ. Code § 1791(a).

178.   Cal. Civ. Code § 1794 provides a cause of action for any consumer who is damaged by the failure of a manufacturer to comply with an express warranty.

179.   In connection with the sale or lease of the Class Vehicles to Woo and California Class Members, Defendant provided Woo and California Class Members with express warranties within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2.

180.   Specifically, in connection with the sale or lease of the Class Vehicles to Woo and California Class Members, Defendant provided Woo and California Class Members with a New Vehicle Limited Warranty, under which it agreed to repair original components found to be defective in material or workmanship under normal use and maintenance, including the Display Screen.

181.   Woo and California Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

182.   Defendant breached these express warranties in that the Class Vehicles suffer from the above-described defects with the Display Screen, which substantially

50

impair the Class Vehicles' use, safety, and value to Woo and California Class Members.

183.   Woo and California Class Members have given Defendant reasonable opportunities to cure said defects, but Defendant has been unable to do so within a reasonable time.

184.   As a result of said nonconformities, Woo and California Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, comfortable, and efficient transportation.

185.   Woo and California class members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Woo's and California Class Members' acceptance of the Class Vehicles.

186.   Woo and California Class Members would not have purchased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that the Display Screen did not function as advertised and warranted.

187.   As a result of Defendant's breach of express warranties, Woo and California Class Members have been damaged in an amount that is the difference between the value of Class Vehicles if they had possessed the qualities and attributes represented and the value of the Class Vehicles Woo and California Class Members actually received.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FOURTH CAUSE OF ACTION**
**Breach of Implied Warranty Pursuant to Song-Beverly**
**Consumer Warranty Act – Cal. Civ. Code §§ 1792 and 1791.1,** *et seq.*
**(On Behalf of the Nationwide Class or, in the Alternative, the State Classes)**

188.   Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

189.   Defendant is a merchant with respect to motor vehicles.

190.   The Class Vehicles were subject to implied warranties of merchantability running from the Defendant to Plaintiffs and Class Members.

191.   An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

192.   Defendant breached the implied warranty of merchantability in that the Class Vehicles suffer from the above-described defects with the Display Screen and thus were not in merchantable condition when Plaintiffs and Class Members purchased or leased them, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles are used.

193.   Defendant has breached the implied warranty of merchantability because the Class Vehicles when sold or leased would not pass without objection in the trade.

194.   The very system that was designed to keep drivers safe is in fact making them less safe by detracting their attention and poses enough of a safety risk that Class Vehicles cannot be said to provide safe and reliable transportation.

195.   As a result of Defendant's breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.

196.   Additionally, as a result of the Display Defect, Plaintiffs and Class Members were harmed and suffered actual damages in that the Class Vehicles' Display Screens are substantially certain to fail before and after the expiration of applicable warranties.

197.   Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

## FIFTH CAUSE OF ACTION
### Violation of the Consumers Legal Remedies Act,
### Cal. Civil Code §§ 1750, *et seq.*
### (On Behalf of the Nationwide Class or, in the Alternative, the State Classes)

198.   Plaintiffs incorporate by reference all of the above paragraphs of this complaint as though fully stated herein.

199.   The California Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.* ("CLRA") prohibits various deceptive practices in connection with the conduct of a business providing goods, property, or services to consumers primarily for personal, family, or household purposes. The self-declared purposes of the CLRA are to protect consumers against unfair and deceptive business practices and to provide

efficient and economical procedures to secure such protection. Cal. Civil Code § 1760.

200.   Defendant is a "person" as defined in Cal. Civil Code § 1761(c).

201.   Plaintiffs and Class Members are "consumers" as defined in Cal. Civil Code § 1761(d).

202.   The Class Vehicles and the Display Screen constitute "goods" and "services," as defined by Cal. Civ. Code § 1761(a) and (b).

203.   Plaintiffs' and Class Members' purchases or leases of the Class Vehicles constitute "transactions," as defined by Cal. Civ. Code § 1761(e).

204.   Plaintiffs and Class Members purchased or leased the Class Vehicles for personal, family, and household purposes, as defined by Cal. Civ. Code § 1761(d).

205.   Venue is proper under Cal. Civ. Code § 1780(d) because a substantial portion of the conduct at issue occurred in this District.

206.   Defendant violated California Civil Code § 1770(a)(5), (7), (14), and (16) when it sold or leased Plaintiffs and Class Members the Class Vehicles with knowledge that they contained defects with their Display Screen and knowingly concealed said defects from Plaintiffs and Class Members with the intent that Plaintiffs and Class Members rely upon its concealment.

207.   The Class Vehicles' faulty Display Screen poses an unreasonable safety risk to consumers and other members of the public with whom they share the road.

54

Honda had exclusive knowledge of the defect and has actively concealed it from consumers.

208. In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the Class Vehicles are defective. The existence of the Display Defect, which manifests in all or substantially all of the Class Vehicles, is material to a reasonable consumer in that it poses an unreasonable risk to their safety, may lead to thousands of dollars in repair expenses, and causes the Class Vehicles to be worth substantially less than they would otherwise be valued.

209. In purchasing or leasing the Class Vehicles, Plaintiffs and Class Members were deceived by Defendant's failure to disclose that the Class Vehicles suffered from the Display Defect as described above, or that Defendant would not cure such defect as required under applicable warranties.

210. In purchasing or leasing the Class Vehicles, Plaintiffs and Class Members were deceived by Defendant's failure to disclose that the Display Screen is substantially likely to fail in the course of ordinary use of the Class Vehicles.

211. Defendant owed Plaintiffs and Class Members a duty to disclose the truth about the Display Defect because:

> a. Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' Display Screen;

b. Defendant knew that the Class Vehicles and their Display Screens suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use;

c. Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and their Display Screens; and

d. Defendant actively concealed the defective nature of the Class Vehicles and their Display Screens from Plaintiffs and Class Members.

212.   Defendant had a duty to disclose that due to the Display Defect, the Display Screen in the Class Vehicles regularly and systematically malfunctions, causing the Display Screen (1) to dim or go dark by itself, or (2) freeze, or (3) go into full bright mode blinding driver during night time, causing distraction to the driver, and rendering Infotainment Features inoperable, because Plaintiffs and Class Members relied on Defendant's material representations that the Class Vehicles they were purchasing or leasing were equipped with a functional Display Screen, free from defects.

213.   Defendant intentionally and knowingly concealed material facts regarding the Class Vehicles with an intent to mislead Plaintiffs and Class Members.

214.    Plaintiffs and Class Members reasonably relied upon Defendant's false misrepresentations. They had no way of knowing that Defendant's representations were false and gravely misleading.

215.    Plaintiffs and Class Members were unaware of the Display Defect and that the Display Screen is substantially likely to fail in the course of normal everyday driving conditions and would not have purchased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, of such defects in the Class Vehicles.

216.    As a result of Defendant's acts, Plaintiffs and Class Members have suffered damages.  Plaintiffs and Class Members would not have purchased or leased Class Vehicles had the defect and associated risks been disclosed to them.  They are left with vehicles of diminished value and utility because of such defect, which continues to pose a safety risk.

217.    Plaintiffs seek an order requiring Honda to immediately disclose the existence of the Display Defect and associated risks to all existing and prospective customers, to repair the defect and all resulting damage in Class Vehicles free of charge, and to cease selling new or certified pre-owned Class Vehicles through its dealerships until the defect is remedied.

218.    Plaintiffs provided Defendant with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a).  Defendant failed to provide appropriate relief for their violations of the CLRA. Therefore, Plaintiffs seek monetary,

57

compensatory, and punitive damages, in addition to the injunctive and equitable relief that he sought before.

## SIXTH CAUSE OF ACTION
### Violation of California's Unfair Competition Law
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
### (On Behalf of the Nationwide Class or, in the Alternative, the State Classes)

219.   Plaintiffs incorporate by reference all of the above paragraphs of this complaint as though fully stated herein.

220.   California's Unfair Competition Law ("UCL"), California's Bus. & Prof. Code, § 17200, prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

221.   The Class Vehicle's faulty Display Screen poses an unreasonable safety risk to consumers and other members of the public with whom they share the road. Honda had exclusive knowledge of the defect and has actively concealed it from consumers.

222.   In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the Class Vehicles are defective.  The existence of the Display Defect, which manifests in all or substantially all of the Class Vehicles, is material to a reasonable consumer in that it poses an unreasonable risk to their safety, may lead to thousands of dollars in repair expenses, and causes the Class Vehicles to be worth substantially less than they would otherwise be valued.

58

223.   In purchasing or leasing the Class Vehicles, Plaintiffs and Class Members were deceived by Defendant's failure to disclose that the Display Screens in the Class Vehicles suffered from the Display Defect as described above, or that Defendant would not cure such defect as required under applicable warranties.

224.   In purchasing or leasing the Class Vehicles, Plaintiffs and Class Members were deceived by Defendant's failure to disclose that the Display Screen is substantially likely to fail in the course of ordinary vehicle operation.

225.   Defendant owed Plaintiffs and Class Members a duty to disclose the truth about the Display Defect because:

  a. Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' Display Screen;

  b. Defendant knew that the Class Vehicles and their Display Screens suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use;

  c. Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and their Display Screens; and

59

d.  Defendant actively concealed the defective nature of the Class Vehicles and their Display Screens from Plaintiffs and Class Members.

226.  Defendant had a duty to disclose that, due to the Display Defect, the Display Screen in the Class Vehicles regularly and systematically malfunctions, causing the Display Screen (1) to dim or go dark by itself, or (2) freeze, or (3) go into full bright mode blinding driver during night time, causing distraction to the driver, and rendering Infotainment Features inoperable, because Plaintiffs and Class Members relied on Defendant's material representations that the Class Vehicles they were purchasing or leasing were equipped with a functional Display Screen, free from defects.

227.  Defendant intentionally and knowingly concealed material facts regarding the Class Vehicles with an intent to mislead Plaintiffs and Class Members.

228.  Plaintiffs and Class Members reasonably relied upon Defendant's false misrepresentations. They had no way of knowing that Defendant's representations were false and gravely misleading.

229.  Plaintiffs and Class Members were unaware of the Display Defect and that the Display Screens are substantially likely to fail in the course of normal everyday driving conditions and would not have purchased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, of such defects in the Class Vehicles.

230.   Plaintiffs and Class Members are reasonable consumers who do not expect their vehicles to unexpectedly black out their Display Screens, freeze their Display Screens, blind them with full brightness at night, and distract them by making Infotainment Features inoperable.

231.   Defendant knew the Class Vehicles and their Display Screens suffered from inherent defects, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

232.   In failing to disclose the defects with the Display Screens, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

233.   The facts Defendant concealed from or failed to disclose to Plaintiffs and Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease the Class Vehicles.   Had Plaintiffs and Class Members known that the Class Vehicles' Display Screens were defective and posed a safety hazard, then Plaintiffs and Class Members would not have purchased or leased the Class Vehicles equipped with the Display Screens, or would have paid less for them.

234.   Defendant continued to conceal the defective nature of the Class Vehicles and their Display Screens even after the Class Members began to report problems.

235.   Defendant's conduct was and is likely to deceive consumers.

236.   Defendant's acts, conduct and practices were unlawful, in that they constituted:

      a.   Violations of the California Consumer Legal Remedies Act;

      b.   Violations of the Song-Beverly Consumer Warranty Act; and

      c.   Violations of the express warranty provisions of California Commercial Code section 2313.

237.   By its conduct, Defendant has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

238.   Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

239.   As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

240.   The Class Vehicles are worth less without a functioning Display Screen.

241.   Defendant has been unjustly enriched and should be required to make restitution to Plaintiffs and Class Members pursuant to §§ 17203 and 17204 of the Business & Professions Code.

242.   Further, Plaintiffs seek an order enjoining Defendant from committing such unlawful, unfair, and fraudulent business practices, and seek the full amount of money Plaintiffs and Class Members paid for the Display Screen and/or restitutionary

62

disgorgement of profits from Defendant.  Plaintiffs also seek attorneys' fees and costs under Cal Code Civ. Proc. § 1021.5.

## COLORADO CLASS

### SEVENTH CAUSE OF ACTION
**Breach of Express Warranty, Colo. Rev. Stat. Ann. § 4-2-313**
**(In the Alternative, the Colorado Class)**

243.  Plaintiff Rifkin (Plaintiff for purposes of Colorado Class Count) incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

244.  In connection with the sale or lease of the Class Vehicles to Rifkin and Colorado Class Members, Defendant provided Rifkin and Colorado Class Members with a New Vehicle Limited Warranty, under which it agreed to repair original components found to be defective in material or workmanship under normal use and maintenance, including the Display Screen.

245.  Rifkin and Colorado Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

246.  Defendant breached these express warranties in that the Class Vehicles suffer from the above-described defects with the Display Screen, which substantially impair the Class Vehicles' use, safety, and value to Rifkin and Colorado Class Members.

247.  Rifkin and Colorado Class Members have given Defendant reasonable opportunities to cure said defects, but Defendant has been unable to do so within a reasonable time.

248.  As a result of said nonconformities, Rifkin and Colorado Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, comfortable, and efficient transportation.

249.  Rifkin and Colorado Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Rifkin's and Colorado Class Members' acceptance of the Class Vehicles.

250.  Rifkin and Colorado Class Members would not have purchased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that the Display Screen did not function as advertised and warranted.

251.  As a result of Defendant's breach of express warranties, Rifkin and Colorado Class Members have been damaged in an amount that is the difference between the value of Class Vehicles if they had possessed the qualities and attributes represented and the value of the Class Vehicles Rifkin and Colorado Class Members actually received.

## EIGHTH CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability, Colo. Rev. Stat. Ann. § 4-2-314
### (In the Alternative, the Colorado Class)

252.    Plaintiff Rifkin (Plaintiff for purposes of Colorado Class Count) incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

253.    Defendant is a merchant with respect to motor vehicles.

254.    The Class Vehicles were subject to implied warranties of merchantability running from the Defendant to Rifkin and Colorado Class Members.

255.    An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

256.    Defendant breached the implied warranty of merchantability in that the Class Vehicles suffer from the above-described defects with the Display Screen and thus were not in merchantable condition when Rifkin and Colorado Class Members purchased or leased them, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles are used.

257.    Defendant has breached the implied warranty of merchantability because the Class Vehicles when sold or leased would not pass without objection in the trade.

258.    The very system that was designed to keep drivers safe is in fact making them less safe by detracting their attention and poses enough of a safety risk that Class Vehicles cannot be said to provide safe and reliable transportation.

259.   As a result of Defendant's breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.

260.   Additionally, as a result of the Display Defect, Rifkin and Colorado Class Members were harmed and suffered actual damages in that the Class Vehicles' Display Screens are substantially certain to fail before and after the expiration of applicable warranties.

261.   Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

**TENNESSEE CLASS**

**NINETH CAUSE OF ACTION**
**Breach of Express Warranty under Tenn. Code Ann. § 47-2-313**
**(In the Alternative, the Tennessee Class)**

262.   Plaintiff Schwert (Plaintiff for purposes of Tennessee Class Count) incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

263.   In connection with the sale or lease of the Class Vehicles to Schwert and Tennessee Class Members, Defendant provided Schwert and Tennessee Class Members with a New Vehicle Limited Warranty, under which it agreed to repair original components found to be defective in material or workmanship under normal use and maintenance, including the Display Screen.

264.   Schwert and Tennessee Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

265.   Defendant breached these express warranties in that the Class Vehicles suffer from the above-described defects with the Display Screen, which substantially impair the Class Vehicles' use, safety, and value to Schwert and Tennessee Class Members.

266.   Schwert and Tennessee Class Members have given Defendant reasonable opportunities to cure said defects, but Defendant has been unable to do so within a reasonable time.

267.   As a result of said nonconformities, Schwert and Tennessee Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, comfortable, and efficient transportation.

268.   Schwert and Tennessee Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Schwert's and Tennessee Class Members' acceptance of the Class Vehicles.

269.   Schwert and Tennessee Class Members would not have purchased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that the Display Screen did not function as advertised and warranted.

270.    As a result of Defendant's breach of express warranties, Schwert and Tennessee Class Members have been damaged in an amount that is the difference between the value of Class Vehicles if they had possessed the qualities and attributes represented and the value of the Class Vehicles Schwert and Tennessee Class Members actually received.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendant as follows:

A.  An order certifying the proposed Class and Sub-Classes, designating Plaintiffs as named representatives of the Class(es), and designating the undersigned as Class Counsel;

B.  An order approving revocation of acceptance of the Class Vehicles;

C.  Money damages, in the form of a refund of the full contract price, including trade-in allowance, taxes, fees, insurance premiums, interest, and costs, and a refund of all payments made by Plaintiffs and class members on the subject contracts;

D.  Equitable relief including, but not limited to, replacement of the Class Vehicles with new vehicles, or repair of the defective Class Vehicles with an extension of the express warranties and service contracts which are or were applicable to the Class Vehicles, in the event that Plaintiffs are not found to be entitled to revocation;

68

E. A declaration requiring Defendant to comply with the various provisions of the state and federal consumer protection statutes herein alleged and to make all the required disclosures;

F. Incidental and consequential damages;

G. Punitive damages;

H. Reasonable attorneys' fees and costs;

I. Pre-judgment and post-judgment interest, as provided by law;

J. Plaintiffs demand that Defendant perform a recall, and repair all Class Vehicles; and

K. Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

DATED:  October 28, 2019              TRINETTE G. KENT

By: _/s/  Trinette G. Kent_
Trinette G. Kent, Esq.
Lemberg Law, LLC
*Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT