IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY WOO, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>AMERICAN HONDA MOTOR CO., INC.,<br><br>    Defendant. | Case No. 19-cv-07042-MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT; AFFORDING PLAINTIFFS LEAVE TO AMEND; CONTINUING CASE MANAGEMENT CONFERENCE** |

Before the Court is defendant American Honda Motor Co.'s ("Honda") Motion, filed February 27, 2020, "to Dismiss the First Amended Class Action Complaint." Plaintiffs Tony Woo ("Woo"), Daniel Rifkin ("Rifkin"), and Douglas P. Schwert ("Schwert") have filed opposition, to which Honda has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

**BACKGROUND**

In the operative complaint, the First Amended Complaint ("FAC"), plaintiffs allege that Rifkin, on or about April 6, 2017, purchased a new Honda CR-V EX vehicle from an authorized Honda dealership in Denver, Colorado (see FAC ¶ 96), that Schwert, on or about December 30, 2017, purchased a new 2018 Honda CR-V Touring vehicle from an authorized Honda dealership in Chattanooga, Tennessee (see FAC ¶ 119), and that Woo, on or about January 12, 2019, purchased a new 2018 Honda CR-V EX vehicle from an authorized Honda dealership in Chico, California (see FAC ¶ 71).

---

[1] By Clerk's notice filed March 18, 2020, the Court vacated the hearing scheduled for April 3, 2020, and took the matter under submission.

Plaintiffs allege that each plaintiff's vehicle has a "Display Screen" allowing him to "access and operate [the] [v]ehicle's safety, information, communication, and entertainment features[,] such as smartphone integration, hands-free calling, navigation (if equipped), Bluetooth audio streaming, radio and music controls, rear-view camera and vehicle settings." (See FAC ¶ 3.) According to plaintiffs, their respective Display Screens are "defective" in that they "dim and go dark, freeze, or shine at full brightness, causing driver distraction and rendering the [vehicles'] information center inoperable." (See FAC ¶ 2.) Plaintiffs allege such "malfunctions" occur "regularly and unexpectedly." (See FAC ¶ 5.)

Plaintiffs also allege that, although Honda "was on actual notice of hundreds, perhaps thousands, of consumers nationwide complaining about the Display Defect before any of the [p]laintiffs bought their cars" (see FAC ¶ 36), Honda "failed to disclose or actively concealed at . . . the time of [plaintiffs'] purchases" the "defects relating to the Display Screen" (see FAC ¶ 57). Plaintiffs further allege that each of them, after experiencing the above-referenced "defects," took his vehicle to one or more Honda dealerships, which, in each instance, was unable to fix the "defect" (see FAC ¶¶ 74-89, 99-111, 122-32, 136-39).

Based on the above allegations, plaintiffs, on their own behalf and on behalf of a putative class, assert nine Causes of Action, each based on one or more of the following three theories: (1) Honda, by not repairing the alleged defect, breached the express terms of its "New Vehicle Limited Warranty," which warranty, plaintiffs assert, requires Honda to "repair original components found to be defective in material or workmanship under normal use and maintenance" (see FAC ¶ 167); (2) Honda breached the implied warranty of merchantability, as the alleged defect makes drivers "less safe by detracting their attention and poses enough of a safety risk that [the] [v]ehicles cannot be said to provide safe and reliable transportation" (see FAC ¶¶ 193, 195); and (3) Honda engaged in deceptive and unfair business practices by selling vehicles to plaintiffs "with knowledge that [the vehicles] contained defects with their Display Screen and knowingly concealed

said defects from [p]laintiffs" (see FAC ¶ 207).

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

**DISCUSSION**

In its motion, Honda seeks dismissal of each claim, and, to the extent any such claim is not dismissed, an order finding plaintiffs may not proceed on behalf of a nationwide class.

**A. Failure to State a Claim**

As noted, the FAC includes nine Causes of Action, which the Court next considers

in turn.

### 1. First Cause of Action

In the First Cause of Action, plaintiffs allege that Honda, by failing "to comply with the written and implied warranties" applicable to their vehicles, violated the Magnusson-Moss Warranty Act ("MMWA"). (See FAC ¶ 161; see also FAC ¶ 162-64.) By the instant motion, Honda, in addition to arguing plaintiffs have failed to state a claim for breach of either express or implied warranty, asserts the Court lacks jurisdiction to consider the MMWA claim to the extent it is brought on behalf of the putative class.

The Court first considers the question of jurisdiction.

The MMWA, in 15 U.S.C. § 2310(d), provides: "A consumer who is damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty [or] implied warranty . . . may bring suit for damages and other legal and equitable relief – (A) in any court of competent jurisdiction in any State or the District of Columbia; or (B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection." See 15 U.S.C. § 2310(d)(1). The MMWA further provides: "No claim shall be cognizable in a suit brought under paragraph (1)(B) – (A) if the amount in controversy of any individual claim is less than the sum or value of $25; (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." See 15 U.S.C. § 2310(d)(3).

Here, as the number of named plaintiffs is three, and as neither the initial complaint nor the FAC includes facts to support a finding that the amount placed in controversy by the three named plaintiffs is $50,000 more,[2] the Court finds it lacks federal

//

---

[2] Although plaintiffs seek a refund of the amounts paid for their vehicles, plaintiffs do not include any such figure in the FAC.

4

question jurisdiction over the MMWA claim.[3]  Indeed, plaintiffs neither alleged in the FAC, nor do they argue in their opposition, that the Court has federal question jurisdiction over the MMWA claim; rather, plaintiffs, citing five district court cases, contend the Court has jurisdiction under the Class Action Fairness Act ("CAFA").  As set forth below, the Court is not persuaded by the authority on which plaintiffs rely.

Under CAFA, a district court has diversity jurisdiction over a class action wherein the parties are minimally diverse and the amount in controversy exceeds $5,000.000.  See 28 U.S.C. § 1332(d)(2).  The five cited cases, in concluding district courts can exercise CAFA jurisdiction over MMWA claims, contain no independent reasoning for such determination; instead they either cite to Chavis v. Fidelity, 415 F. Supp. 2d 620 (D. S.C. 2006), or other district court cases that have cited to Chavis.  See, e.g., Keegan v. American Honda Motor Co., 838 F. Supp. 2d 929, 954-55 (C.D. Cal. 2012).

In Chavis, the district court appears to have held, where a plaintiff initially files in state court an MMWA claim that would not be cognizable if filed in federal court, and the matter is later removed to federal court, the district court can, pursuant to § 2310(d)(1)(A), exercise CAFA jurisdiction over the removed MMWA claim because such district court qualifies as a "court of competent jurisdiction in [a] State."  See id. at 623, 626.  If such reasoning were adopted, however, § 2310(d)(1)(B) would be rendered a "nullity," a result contrary to "the rule that [a] statute[ ] should not be construed in a manner which robs specific provisions of independent effect."  See In re Cervantes, 219 F.3d 955, 961 (9th Cir. 2000).  Moreover, as explained by another district court, although CAFA provides "a basis for federal courts to exercise jurisdiction over state law disputes between diverse parties," it does not "fill in the gaps for missing substantive requirements of a federal law."  See, e.g., Floyd v. American Honda Motor Co., 2018 WL 6118582, at *3 (C.D. Cal. 2018) (dismissing MMWA claims where plaintiffs failed to meet numerosity

---

[3]The Court "has the duty to consider subject matter jurisdiction sua sponte in every case, whether the issue is raised by the parties or not."  See Spencer Enterprises, Inc. v. United States, 345 F.3d 683, 687 (9th Cir. 2003).

requirement of § 2310(d)(3)(C)).

Nevertheless, although the Court finds it lacks federal question and diversity jurisdiction over plaintiffs' MMWA claim, such finding does not end the inquiry. Where, as here, a plaintiff brings one or more claims over which the court has original jurisdiction,[4] at least two Courts of Appeals, as well as a number of district courts in the those two and other Circuits, have held such court has supplemental jurisdiction over an MMWA claim that "arise[s] from the same controversy." See Voelker v. Porsche Cars North America, Inc., 353 F.3d 516, 521-22 (7th Cir. 2003) (finding district court properly exercised supplemental jurisdiction over MMWA claim where court had original jurisdiction over Truth in Lending Act claim"; citing 28 U.S.C. § 1367(a)); see also Burzlaff v. Thoroughbred Motorsports, Inc., 758 F.3d 841, 844-45 (7th Cir. 2014) (holding district court with "original diversity jurisdiction" over state "lemon law" claim had "supplemental jurisdiction" over MMWA claim); Suber v. Chrysler Corp., 104 F.3d 578, 588 n.12 (3rd Cir. 1997) (noting district court, on remand, "can exercise supplemental jurisdiction" over MMWA claim if it finds plaintiff "has established diversity jurisdiction with his [state law] claim"); Pierre v. Planet Automotive, Inc., 193 F. Supp. 3d 157, 170-71 (E.D. N.Y. 2016) (collecting district court cases exercising supplemental jurisdiction over MMWA claims). The Court finds the reasoning of those cases persuasive.

Accordingly, to the extent Honda argues the Court lacks jurisdiction over the MMWA claim, the motion will be denied.

The Court next turns to the merits of the MMWA claim, which, as noted, is based on the theory that Honda breached the terms of written and implied warranties.

//
//
//

---

[4] It is undisputed that the Court has, under CAFA, diversity jurisdiction over the Second through Ninth Causes of Action.

6

### a. Breach of Express Warranty

Plaintiffs allege that each plaintiff purchased a new Honda vehicle and that each such sale was "accompanied with Honda's 3-year/36,000 New Vehicle Limited Warranty" ("NVLW") (see FAC ¶ 62; see also FAC ¶¶ 71, 96, 119), which provides that "Honda will repair or replace any part that is defective in material or workmanship under normal use" (see FAC ¶ 64). As noted, plaintiffs further allege they took their vehicles to a Honda dealership, which, in each instance, was unable to fix the alleged defect. Based on such failure to fix the alleged defect, plaintiffs assert Honda, in violation of California law, Colorado law, and Tennessee law, respectively, breached the express warranty.[5]

Honda argues the NVLM, being limited by its terms to defects in "material or workmanship" (see Shortnacy Decl. Ex. C), only covers manufacturing defects, as opposed to design defects, and that the FAC includes no facts to support a finding that the alleged defect is a manufacturing defect.

Under California law, a warranty that provides protection against "defects in materials or workmanship" does not cover design defects. See Troup v. Toyota Motors Corp., 545 Fed. Appx. 668, 668–69 (9th Cir. 2013) (noting, "[i]n California, express warranties covering defects in materials and workmanship exclude defects in design"); see also Moss v. Smith, 181 Cal. 519, 520 (1919) (affirming judgment for plaintiff on breach of warranty claim, where warranty covered "any part that is defective in material or workmanship" and evidence showed "defective operation of the car was due, not to the imperfect design of the engine, but to faulty workmanship in its construction"); Paduano v. American Honda Motor Co., 169 Cal. App. 4th 1453, 1467-68 (2009) (affirming summary judgment for defendant on breach of express warranty claim, where warranty covered defects in "material or workmanship" and plaintiff failed to offer

---

[5]As the MMWA "borrows state law causes of action," such as "express and implied warranty claims," state law "determines the disposition of [MMWA] claims." See Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 and n.3 (9th Cir. 2008).

1 evidence to show his "low gas mileage [was] the result of a mechanical defect").[6]

2     A "design defect" exists "when the product is built in accordance with its intended
3 specifications, but the design itself is inherently defective."  See McCabe v. American
4 Honda Motor Co., 100 Cal. App. 4th 1111, 1120 (2002).  By contrast, a "manufacturing
5 defect exists when an item is produced in a substandard condition," i.e., where a
6 manufacturer "fail[s] to comply with its own design specifications," and is "often
7 demonstrated by showing the product performed differently from other ostensibly
8 identical items of the same product line."  See id. (internal citation omitted).

9     Here, as Honda points out, plaintiffs allege the claimed defect is one "in material
10 and/or workmanship" (see FAC ¶ 30), but include no facts to support such conclusory
11 assertion.  Courts are "not bound to accept as true a legal conclusion couched as a
12 factual allegation."  See Iqbal, 556 U.S. at 678.  Further, to the extent the FAC includes
13 facts pertaining to the type of alleged defect, those facts would appear to support a
14 finding that such defect is one of design.  Specifically, plaintiffs, in bringing the action on
15 behalf of a proposed class of all "owners and lessees" of the "2017-2019 Honda CR-V
16 models" (see FAC ¶¶ 1, 30), are, in essence, acknowledging plaintiffs' vehicles do not
17 perform "differently from other ostensibly identical items of the same product line," see
18 McCabe, 100 Cal. App. 4th at 1120, a fact evidencing a design rather than manufacturing
19 defect.

20     Accordingly, to the extent the MMWA claim is based on a theory that Honda has
21 breached the terms of its express warranties, the claim is subject to dismissal.
22 //

---

[6]With respect to the meaning of "materials or workmanship," although plaintiffs, as noted, seek relief for breach of express warranty under the laws of California, Colorado, and Tennessee, the parties only cite to authority applying California law or state law other than that of Colorado or Tennessee.  Under such circumstances, the Court, for purposes of the instant motion only, assumes Colorado and Tennessee law are, as to the meaning of "materials or workmanship," no different than the law to which the parties have cited. See, e.g., O'Connor v. BMW of North America, LLC, 2020 WL 1303285, at *4 (D. Colo. March 19, 2020) (holding, under Colorado law, "defective in material or workmanship" refers to "'manufacturing defects' but not design defects").

### b. Breach of Implied Warranty

Plaintiffs allege that Honda, in violation of California and Colorado law, breached the implied warranty of merchantability.[7]

Under California law, "every sale of consumer goods that are sold at retail in [California] shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." See Cal. Civ. Code § 1792. Similarly, under Colorado law, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." See Colo. Rev. Stat. § 4-2-314 (1). Under both California and Colorado law, the term "merchantability" is defined as "fit for the ordinary purposes for which such goods are used." See Cal. Civ. Code § 1791.1(a); Colo. Rev. Stat. § 4-2-314(2)(c).

According to plaintiffs, Honda breached the implied warranty of merchantability because the alleged display screen defects render their respective vehicles "unfit for the ordinary purposes for which such vehicles are used" (see FAC ¶ 193), and Honda has "failed to remedy [plaintiffs'] [v]ehicles' defects within a reasonable time, and/or a reasonable number of attempts" (see FAC ¶ 163).

Honda argues the alleged display screen defects do not render plaintiffs' vehicles unfit for transportation, which, it asserts, is the ordinary purpose for which one uses a vehicle.[8] In response, plaintiffs acknowledge their vehicles can be driven but contend the defect makes such driving unsafe.

Under California law, as interpreted by the Ninth Circuit, a plaintiff can establish a claim for breach of the implied warranty of merchantability not only by showing the defect

---

[7]Plaintiffs do not assert a breach of implied warranty claim under Tennessee law.

[8]Honda also argues there is no breach because it "has released an effective countermeasure for the alleged performance issues at no charge." (See Def.'s Notice of Mot. at 2:12, 19-20.) Although Honda requests the Court take judicial notice of such circumstance, there is no recognized legal basis for the Court to do so. Consequently, the Court does not consider at this time whether, assuming an "effective countermeasure" now exists, the breach of implied warranty claims lack merit.

1  renders the vehicle "inoperable" but, alternatively, by showing the defect "compromise[s]
2  the vehicle's safety." See Troup, 545 Fed. Appx. at 669 (citing cases); see also Isip v.
3  Mercedes-Benz USA, LLC, 155 Cal. App. 4th 19, 27 (2007) (approving jury instruction
4  "[d]efining the [implied] warranty in terms of a vehicle that is 'in safe condition and
5  substantially free of defects'"; finding such instruction "consistent with the notion that the
6  vehicle is fit for the ordinary purpose for which a vehicle is used").[9]
7        Here, as noted, plaintiffs allege their display screens "dim and go dark, freeze, or
8  shine at full brightness, causing driver distraction" (see FAC ¶ 2), and that they "regularly
9  and unexpectedly malfunction[ ] while the . . . [v]ehicles are in motion" (see FAC ¶ 5).
10 Plaintiffs further allege that, when their screens go into "full bright mode" at night, the
11 brightness is "blinding."  (See id.; see also FAC ¶ 9.)  Consistent therewith, plaintiffs
12 quote from a number of consumer complaints made by persons who own the same
13 models as plaintiffs, asserting, for example, (1) the display screen unexpectedly goes to
14 "full brightness," which "interferes with night driving especially when making right hand
15 turns by creating a blinding condition," (2) the screen "blinds [the driver] at night because
16 it is very bright so [the driver] can't really see the road"; (3) the screen "will randomly
17 flash, dim and beep," causing a "high level of distraction"; (4) "the random brightness
18 changes are quite dangerous at night time, when max brightness occurs suddenly"; (5)
19 "the brightness of the screen changes by itself," which is "very distracting while driving";
20 (6) the screen "will not dim and blinds driver when driving after dark"; and (7) the screen
21 "is stuck on hi brightness," causing "safety issue while driving at night" (See FAC ¶ 37.)
22 The Court finds the above-cited factual allegations are sufficient to support a finding that

---

[9] With respect to how a plaintiff may establish a vehicle is not fit for its ordinary purposes, although plaintiffs, as noted, bring their claim under the laws of California and Colorado, the parties cite to authority applying California law or state law other than that of Colorado.  Under such circumstances, the Court, for purposes of the instant motion only, assumes Colorado law is no different from the law to which the parties have cited. See, e.g., O'Connor, 2020 WL 1303285, at *4 (holding, under Colorado law, in "vehicle context," implied warranty "is simply a guarantee that [vehicles] will operate in a safe condition and substantially free of defects").

10

the asserted defect compromises plaintiffs' ability to operate their respective vehicles safely, and, consequently, that plaintiffs have pleaded a claim for breach of the implied warranty.

The Court next considers whether plaintiffs nonetheless have failed to plead such claim on behalf of Schwert. As noted, plaintiffs base their breach of implied warranty claim on violations of California and Colorado law, and, as also noted, Schwert purchased his vehicle in Tennessee. (See FAC ¶ 119.) Although plaintiffs argue Schwert can state a breach of implied warranty claim under California law, specifically, California Civil Code § 1792, that statute, as Honda points, only applies to goods sold "in" California. See Cal. Civil Code § 1792 (providing implied warranty applies to "every sale of consumer goods that are sold at retail in this state"). Consequently, Schwert cannot rely on § 1792.

Accordingly, to the extent the First Cause of Action is brought on behalf of Woo and Rifkin and based on a theory that Honda has breached the implied warranty of merchantability, the claim is not subject to dismissal; in all other respects, the claim is subject to dismissal.

### 2. Second Cause of Action

In the Second Cause of Action, plaintiffs allege Honda breached their express warranties, in violation of California Commercial Code § 2313.

For the reasons stated above with respect to the First Cause of Action, the claim is subject to dismissal.

### 3. Third Cause of Action

In the Third Cause of Action, plaintiffs allege, on behalf of Woo only, that Honda breached the express warranty, in violation of California Civil Code §§ 1791.2 and 1793.

For the reasons stated above with respect to the First Cause of Action, the claim likewise is subject to dismissal.

### 4. Fourth Cause of Action

In the Fourth Cause of Action, plaintiffs allege Honda breached the implied

warranty of merchantability, in violation of California Civil Code § 1792.

For the reasons stated above with respect to the First Cause of Action, the claim is not subject to dismissal to the extent it is asserted on behalf of Woo. As § 1792 only applies to sales made in California, however, see Cal. Civil Code § 1792 (providing implied warranty applies to "every sale of consumer goods that are sold at retail in this state"), a claim under § 1792 cannot be asserted on behalf of Rifkin and Schwert, neither of whom purchased a vehicle in California. (See FAC ¶¶ 96, 119).

Accordingly, the Fourth Cause of Action is not subject to dismissal to the extent it is brought on behalf of Woo and is subject to dismissal to the extent it is brought on behalf of Rifkin and Schwert.

### 5. Fifth Cause of Action

In the Fifth Cause of Action, plaintiffs allege Honda violated the Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750-1784, which Act prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." See Cal. Civ. Code § 1770(a). According to plaintiffs, Honda violated the CLRA by selling them vehicles "with knowledge that they contained defects with their [d]isplay [s]creen," which knowledge Honda "knowingly concealed." (See FAC ¶ 207.)

A plaintiff states a cognizable claim under the CLRA where the plaintiff alleges the defect poses "an unreasonable safety hazard," see Wilson v. Hewlett–Packard Co., 668 F.3d 1136, 1143 (9th Cir. 2012), and the defendant "was aware of [such] defect at the time of sale," see id. at 1145. Honda argues plaintiffs have failed to allege sufficient facts to support a finding that the asserted defect poses an unreasonable safety hazard or that it was aware of any such defect at the time plaintiffs purchased their respect vehicles. Additionally, Honda argues the claim sounds in fraud and has not been pleaded in conformity with Rule 9(b).

#### a. Safety Hazard

With respect to the issue of safety, the Court finds, for the reasons stated above

12

1    with respect to the First Cause of Action, plaintiffs have pleaded sufficient facts to support
2    a finding that the alleged defect poses an unreasonable safety hazard.

### b. Knowledge

With respect to the issue of Honda's knowledge of the asserted safety defect, plaintiffs primarily rely on the following factual allegations: (1) complaints buyers made to the National Highway Traffic Safety Administration ("NHTSA") (see FAC ¶ 37), and the fact that Honda "tracks the NHTSA databases for consumer complaints regarding [its] automobiles" (see FAC ¶ 47); (2) complaints buyers made on "various public online forums" Honda "regularly monitors" (see FAC ¶¶ 38, 50); and (3) a "Tech Line Summary Article", titled "Display Audio Screen Dims or Goes Dark by Itself," which article Honda issued to its dealers on January 23, 2019, and in which it stated it was not aware of a "fix" at that time, but recommended a "temporary" solution to address the issue (see FAC ¶¶ 51-53).

As to Woo, plaintiffs' allegations are sufficient. In particular, in addition to the various consumer complaints, the majority of which predate Woo's purchase, Honda, on January 23, 2019, as noted, acknowledged in the Tech Line Summary Article the problems with the display screen. (See FAC ¶¶ 51-53.) Although the Article was issued eleven days after January 12, 2019, the date on which Woo purchased his vehicle, a reasonable inference can be drawn that Honda had knowledge of the asserted defect prior to the date on which it issued the Article, given Honda's acknowledgment that, by such time, it had already developed a "temporary solution." Further, given the short interval between such issuance and Woo's purchase, one can reasonably infer Honda's knowledge of the defect existed at the time of Woo's purchase. See Sloan v. General Motors LLC, 287 F. Supp. 3d 840, 866 (N.D. Cal. 2018) (citing cases).

As to Rifkin, however, plaintiffs have failed to allege any facts to support a finding Honda was aware of the asserted defect on April 6, 2017, the date Rifkin purchased his vehicle, as every consumer complaint identified in the FAC was made after his purchase and the Tech Line Summary Article was issued after the purchase. (See FAC ¶¶ 37, 38

(listing complaints and dates made, with earliest dated April 28, 2017).)[10]

Similarly, as to Schwert, plaintiffs have failed to allege sufficient facts to support a finding Honda was aware of the asserted defect on December 30, 2017, the date Schwert purchased his vehicle, the sole difference being plaintiffs' identification of eight consumer complaints made prior to the date on which Schwert purchased his vehicle. Of those eight, however, only two complaints appear to describe their experiences as posing a safety hazard (see FAC at 10:8-13, 22 at 7-12), while the others only describe their experience as an annoyance (see, e.g., FAC at 21:9-11 (stating screen "went blank but music still playing"); FAC at 21:12-20 (stating screen made "annoying beeps" and went "dark" until driver "stopped the engine")). See Baba v. Hewlett-Packard Co., 2011 WL 317650, at *3 (N.D. Cal. January 28, 2011) (finding "[a]wareness of a few customer complaints" insufficient to "establish knowledge of an alleged defect"). Moreover, none of the eight complaints were from persons who identified themselves as drivers of the 2018 CR-V Touring model, the model Schwert purchased.

### c. Rule 9(b)

Honda contends, and plaintiffs do not dispute, the CLRA claim sounds in fraud. (See, e.g., FAC ¶ 207 (alleging Honda "knowingly concealed [the] defects from [p]laintiffs" with "intent that [p]laintiffs . . . rely upon its concealment"); see FAC ¶ 210 (alleging plaintiffs "were deceived" by Honda's failure to disclose defect); see FAC ¶ 217 (alleging plaintiffs "suffered damages" by Honda's failure to disclose, as they "would not

---

[10] Plaintiffs also rely on complaints allegedly made to Honda on its "customer service hotline," as well as complaints made to Honda dealers (see FAC ¶ 43); as those complaints are undated, however, they do not give rise to an inference that Honda knew of the asserted defect at the time of plaintiffs' respective purchases. See Wilson, 668 F.3d at 1148 (holding "undated" consumer complaints insufficient). Plaintiffs additionally rely on "pre-release testing data" and "testing conducted in response to early consumer complaints" (see FAC ¶ 43); as plaintiffs allege no facts as to what information Honda obtained as a result of the "testing," such conclusory allegations likewise do not give rise to an inference that Honda knew of the defect at the relevant times. See Stewart v. Electrolux Home Products, Inc., 2018 WL 1784273, at *9 (E.D. Cal. April 13, 2018) (finding allegation that defendant knew of defect from "early warning systems, statistical analysis, audits, [and] after-market testing" too "conclusory"to support finding defendant knew of asserted defect at time of plaintiff's purchase).

have purchased . . . had the defect and associated risks been disclosed to them").) In light thereof, as Honda notes, Rule 9(b) applies.

Under Rule 9(b), "the circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation, alteration and citation omitted). Specifically, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Id. Here, Honda argues, plaintiffs have failed to sufficiently describe the content of the undisclosed fact, when and where such omitted information should have been revealed, and why plaintiffs would have relied on the information had it been made.

As plaintiffs point out, however, the FAC does include such factual allegations. First, the FAC alleges the information not disclosed to Woo,[11] specifically, the above-described malfunctioning of the display screen. (See FAC ¶¶ 5, 73.) Next, the FAC alleges when and where the omitted information should have been revealed to him, specifically, at Wittmeier Honda in Chico, California, on January 12, 2019, at the time Woo allegedly interacted with a salesperson and then purchased the vehicle. (See FAC ¶ 73.) Lastly, a plaintiff must show that, "had the omitted information been disclosed, [he] would have been aware of it and behaved differently." See Daniel v. Ford Motor Co., 806 F.3d 1217, 1225 (9th Cir. 2015) (internal quotation and citation omitted). In that regard, where, as here, a plaintiff alleges he purchased his vehicle after interacting with a sales representative at an authorized dealership, the court can infer such plaintiff "would have been aware of the disclosure if it has been made" by the dealership, see id. at 1226, and where, as here, a plaintiff alleges a defect "pose[s] safety concerns," the court can infer

---

[11]As the CLRA claims asserted on behalf of Rifkin and Schwert are subject to dismissal for failure to allege Honda had knowledge of the asserted defect at the time those two plaintiffs purchased their respective vehicles, the Court only considers Honda's remaining argument as it pertains to Woo.

15

that, had the asserted defect been disclosed, he would have "behaved differently," see id.

### d. Conclusion

Accordingly, the Fifth Cause of Action is not subject to dismissal to the extent it is brought on behalf of Woo and is subject to dismissal to the extent it is brought on behalf of Rifkin and Schwert.

### 6. Sixth Cause of Action

In the Sixth Cause of Action, plaintiffs allege Honda violated § 17200 of the Business & Professions Code. As pleaded, the claim is derivative of the Second through Fifth Causes of Action. (See FAC ¶ 237.)

As set forth above, the Second and Third Causes of Action are subject to dismissal. Additionally, the Fourth and Fifth Causes of Action are subject to dismissal except to the extent they are asserted on behalf of Woo.

Accordingly, the Sixth Cause of Action is subject to dismissal, except to the extent it is based on the claims set forth in the Fourth and Fifth Causes of Action as asserted on behalf of Woo.

### 7. Seventh Cause of Action

In the Seventh Cause of Action, plaintiffs allege, on behalf of Rifkin only, that Honda, in violation of Colorado Revised Statutes § 4-2-313, breached the terms of the express warranty provided to Rifkin.

For the reasons stated above with respect to the First Cause of Action, the Seventh Cause of Action is subject to dismissal.

### 8. Eighth Cause of Action

In the Eighth Cause of Action, plaintiffs allege, on behalf of Rifkin only, that Honda, in violation of Colorado Revised Statutes § 4-2-314, breached the implied warranty of merchantability.

For the reasons stated above with respect to the First Cause of Action, the Eighth Cause of Action is not subject to dismissal.

//

**9. Ninth Cause of Action**

In the Ninth Cause of Action, plaintiffs allege, on behalf of Schwert only, that Honda, in violation of Tennessee Code § 47-2-313, breached the terms of the express warranty provided to Schwert.

For the reasons stated above with respect to the First Cause of Action, the Ninth Cause of Action is subject to dismissal.

**B. Whether Plaintiffs May Pursue a Nationwide Class**

Plaintiffs seek to proceed on behalf of a "nationwide class" of "[a]ll persons or entities in the United States who bought or leased a Class Vehicle." (See FAC ¶ 144.) In the alternative, plaintiffs seek to proceed on behalf of "state classes," specifically, (1) "[a]ll persons or entities in the State of California who bought or leased a Class Vehicle," (2) "all persons or entities in the State of Colorado who bought or leased a Class Vehicle," and (3) "all persons or entities in the State of Tennessee who bought or leased a Class Vehicle." (See FAC ¶ 145.)

With respect to the putative nationwide class, plaintiffs allege California law should apply to all claims of all class members. (See FAC ¶ 153.) Honda argues the claims asserted on behalf of a nationwide class should be dismissed because it is "evident from the face of the FAC that no single state's law (whether California or any other) could properly be applied" nationwide. (See Def.'s Mot. at 8:26-27.)

As set forth above, there are two cognizable substantive claims arising under California law, namely, the Fourth Cause of Action, alleging on behalf of Woo a violation of California Civil Code § 1792, and the Fifth Cause of Action, alleging on behalf of Woo a violation of the CLRA. As noted, a claim under § 1792 can only be brought by persons who bought goods in California. Consequently, such claim cannot, by its terms, apply nationwide, and plaintiffs, in their opposition, clarify that they do not seek to proceed with such claim on behalf of a nationwide class. (See Pls.' Opp. at 7:27-28.) The Court next turns to the CLRA claim.

In Mazza v. American Honda Motor Co., 666 F.3d 581 (9th Cir. 2012), the Ninth

17

Circuit held that a district court erred by certifying a nationwide class, where the plaintiff alleged a CLRA claim against Honda, the same defendant named here, and in which the CLRA claim was based, as here, on a theory that Honda did not warn the plaintiff of an alleged defect in an automobile. See id. at 587, 590. In particular, the Ninth Circuit found (1) that the CLRA and the "consumer protection statutes" of other states differ on whether scienter is required, whether reliance is required, and on the factual showing required to obtain actual damages and restitution, see id. at 591, (2) that such differences are "material," see id., (3) that "each state has a strong interest in applying its own consumer protection laws" to "transactions" within its borders, see id. at 591-92, and (4) that the state in which the transaction occurred has the strongest interest in applying its law, see id. at 594. In sum, the Ninth Circuit concluded that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." See id.

      Plaintiffs argue the analysis set forth in Mazza should not apply at the pleading stage. In particular, plaintiffs argue, choice of law decisions should await the class certification stage, at which point a determination can be made as to whether differences in state law will be material. The Court disagrees. First, material differences exist as to what the CLRA and statutes of other states require with regard to scienter and/or reliance, see id. at 591, and it is readily apparent from the allegations in the FAC that Honda's state of mind will be at issue, as will the question of whether, had putative class members been advised of the problems with the display screen, they would have acted differently. In addition, plaintiffs seek to obtain, on behalf of the putative class, remedies as to which material differences exist among states as to whether and when a plaintiff is entitled to a particular form of relief. See id.; see also, e.g., Darisse v. Nest Labs, Inc., 2016 WL 4385849, at *9 (N.D. Cal. August 15, 2016) (noting material differences between CLRA and statutes of other states as too whether, and if so circumstances under which, injunctive relief, punitive damages, and attorney's fees can be awarded). Moreover, here, just as in Mazza, "the last event[ ] necessary for liability" occurred in the

state where each class member purchased his car, and, to the extent those purchases were not made in California, "California's interest in applying its law to residents of foreign states is attenuated" and does not outweigh the interests of the jurisdictions in which the purchase took place.  See Mazza, 666 F.3d at 594.

Accordingly, to the extent the CLRA claim is asserted on behalf of a nationwide class, the claim is subject to dismissal.

## CONCLUSION

For the reasons stated above, Honda's motion to dismiss is hereby GRANTED in part and DENIED in part, as follows:

1.  The First Cause of Action is DISMISSED, except to the extent it is based on a theory of breach of implied warranty as asserted on behalf of Woo and Rifkin.

2.  The Second, Third, Seventh, and Ninth Causes of Action are DISMISSED.

3.  The Fourth and Fifth Causes of Action are DISMISSED, except to the extent they are asserted on behalf of Woo.

4.  The Sixth Cause of Action is DISMISSED, except to the extent it is based on the Fourth and Fifth Causes of Action as asserted on behalf of Woo.

5.  The Eighth Cause of Action is not subject to dismissal.

In the event plaintiffs wish to amend to cure any of the deficiencies identified above, plaintiffs shall file a Second Amended Complaint no later than June 19, 2020.  If plaintiffs do not file a Second Amended Complaint by said date, the instant action will proceed on the remaining claims in the FAC, and Honda shall file its answer thereto no later than July 2, 2020.

Lastly, in light of the above, the Case Management Conference is hereby CONTINUED from June 12, 2020, to July 31, 2020, at 10:30 a.m.  A Joint Case Management Statement shall be filed no later than July 24, 2020.

**IT IS SO ORDERED.**

Dated: May 28, 2020

MAXINE M. CHESNEY
United States District Judge

19