IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY WOO, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>AMERICAN HONDA MOTOR CO., INC.,<br><br>    Defendant. | Case No. 19-cv-07042-MMC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY CLAIMS OF PLAINTIFFS WOO AND SCHWERT** |

Before the Court is defendant American Honda Motor Co., Inc.'s ("Honda") "Motion to Compel Arbitration and Stay Claims of Plaintiffs Woo and Schwert," filed February 16, 2021. Plaintiffs Tony Woo ("Woo"), Douglas P. Schwert ("Schwert"), and Daniel Rifkin ("Rifkin") have filed opposition, to which Honda has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND

In the operative complaint, the Second Amended Complaint ("SAC"), plaintiffs allege that Rifkin, on or about April 6, 2017, purchased a new Honda CR-V EX vehicle from a Honda dealership in Denver, Colorado (see SAC ¶ 102), that Schwert, on or about December 30, 2017, purchased a new 2018 Honda CR-V Touring vehicle from a Honda dealership in Chattanooga, Tennessee (see SAC ¶ 125), and that Woo, on or about January 12, 2019, purchased a new 2018 Honda CR-V EX vehicle from a Honda dealership in Chico, California (see SAC ¶ 77).

Plaintiffs allege that each plaintiff's vehicle has a "Display Screen" allowing him to "access and operate" his vehicle's "safety, information, communication, and

---

[1] By order filed March 23, 2021, the Court took the matter under submission.

1 entertainment features." (See SAC ¶ 3.) According to plaintiffs, their respective Display
2 Screens are "defective" in that they "dim and go dark, freeze, or shine at full brightness,
3 causing driver distraction and rendering the [vehicles'] information center inoperable."
4 (See SAC ¶ 2.) Plaintiffs also allege Honda "failed to disclose or actively concealed" the
5 "defects." (See SAC ¶ 62.) Plaintiffs further allege that each of them, after experiencing
6 the above-referenced "defects," took his vehicle to one or more Honda dealerships,
7 which, in each instance, was unable to fix the "defect" (see SAC ¶¶ 81-89, 92-95, 106-
8 115, 129-37, 142-45), and, in addition, that each contacted Honda, which did not provide
9 any information as to how the "defect" could be fixed (see SAC ¶¶ 90-91, 116-17, 138).

Based on the above allegations, all plaintiffs assert, as the First Cause of Action, a federal claim under the Magnuson-Moss Warranty Act. In addition, Woo asserts, as the Second through Sixth Causes of Action, five claims under California law, Rifkin asserts, as the Seventh and Eighth Causes of Action, two claims under Colorado law, and Schwert asserts, as the Ninth and Tenth Causes of Action, two claims under Tennessee law. Each of the ten Causes of Act is based on one or more of the following three theories: (1) Honda, by not repairing the alleged defect, breached the express terms of its "New Vehicle Limited Warranty," which warranty, plaintiffs assert, requires Honda to "repair original components found to be defective in material or workmanship under normal use and maintenance" (see SAC ¶¶ 168, 183, 247, 267; see also ¶ SAC 163); (2) Honda breached the implied warranty of merchantability, as the alleged defect makes drivers "less safe by detracting their attention and poses enough of a safety risk that [the] [v]ehicles cannot be said to provide safe and reliable transportation" (see SAC ¶¶ 195, 262, 282; see also SAC ¶ 163); and (3) Honda engaged in deceptive and unfair business practices, specifically, its having "actively concealed" the "defect" (see SAC ¶¶ 220, 225).

## DISCUSSION

By the instant motion, Honda argues that the claims asserted on behalf of Woo and Schwert only are, under the Federal Arbitration Act ("FAA"), subject to arbitration.

//

The FAA provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

See 9 U.S.C. § 3.

Under the FAA, a district court's role is to determine "if a valid arbitration agreement exists," and, "if so, whether the agreement encompasses the dispute at issue." See Davis v. Nordstrom, Inc., 755 F.3d 1089, 1092 (9th Cir. 2014).

**A. Woo**

With respect to Woo, Honda relies on an "Arbitration Provision" included in a "Retail Installment Sale Contract" ("Sale Contract") between Woo and Ed Wittmeier Ford Inc. ("Wittmeier Ford"), the dealership from which Woo purchased his Honda vehicle. The Arbitration Provision, in relevant part, reads as follows:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract), shall, at your or our election, be resolved by neutral binding arbitration and not by a court action.

(See Kiser Decl. Ex. A at 4.) The Sale Contract defines "you" to be the "Buyer," who is identified as Woo, and defines "us" to be the "Seller," which is identified as Wittmeier Ford. (See id. Ex. A at 1.)

Honda, a nonsignatory to the Sale Contract, first argues that, pursuant to the terms of the Arbitration Provision, the issue of whether Woo's claims against Honda are subject to arbitration must be resolved by an arbitrator rather than a district court. As set forth below, the Court is not persuaded.

Parties to an arbitration agreement "may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by clear and unmistakable

3

evidence." See Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 530 (2019) (internal quotation and citation omitted). Here, although, as set forth above, the Arbitration Provision includes a clause providing that any dispute as to "the arbitrability of the claim" shall be resolved by an arbitrator (see Kiser Decl. Ex. A at 4), the Arbitration Provision, as also set forth above, limits its terms to claims or disputes between Woo and Wittmeier Ford or said dealership's "employees, agents, successors or assigns" (see id.), none of which Honda purports to be. Consequently, the Arbitration Provision lacks the requisite "clear and unmistakable evidence" that Woo agreed to delegate to an arbitrator the threshold question of whether his claims against Honda fall within the Arbitration Provision. See Kramer v. Toyota Motor Corp., 705 F.3d 1122, 1127 (9th Cir. 2013) (holding, where "terms of the arbitration clauses [were] expressly limited to Plaintiffs and the Dealerships," arbitration agreements did "not contain clear and unmistakable evidence that Plaintiffs and Toyota agreed to arbitrate arbitrability"); Jurosky v. BMW of North America, LLC, 441 F. Supp. 3d 963, 967-68 (S.D. Cal. 2020) (finding, where arbitration clause covered claims between plaintiff and dealer or "employees, agents, successors or assigns" of dealer, "the issue of whether the . . . dispute [was] arbitrable given BMW's status as a nonsignatory" was not for arbitrator to decide).

Next, Honda argues that, assuming the question of arbitrability is for the Court to decide, Honda is entitled to enforce the Arbitration Provision on the basis of equitable estoppel. As set forth below, the Court again is not persuaded.

Under California law, a plaintiff is "equitably estopped from avoiding arbitration of his causes of action" against a "nonsignatory defendant" where his claims against the nonsignatory "are intimately founded in and intertwined with the underlying contractual obligations." See Boucher v. Alliance Title Co., 127 Cal. App. 4th 262, 272-73 (2005).[2]

As plaintiffs note, a number of district courts, in considering cases in which a

---

[2] "[S]tate contract law" determines whether a nonsignatory to an arbitration agreement can enforce the agreement. See Kramer, 705 F.3d at 1128. The parties agree California law governs enforceability of the Arbitration Provision.

4

plaintiff and dealership enter into a purchase agreement containing language essentially indistinguishable from the language in the Arbitration Provision, have found the plaintiff was not equitably estopped from avoiding arbitration of his claims against a nonsignatory manufacturer. In particular, those courts concluded, where the plaintiff asserted against the manufacturer claims alleging defects in an automobile, such claims were not founded in and intertwined with the purchase agreement, given that the claims made no reference to a failure to comply with any obligation set forth in the purchase agreement. See, e.g., Jurosky, 441 F. Supp. 3d at 969-75 (holding nonsignatory manufacturer could not enforce arbitration provision in purchase agreement, where plaintiff alleged "no duty, obligation, term, or condition imposed by the purchase agreement that [manufacturer] breached"); Schulz v. BMW of N. Am., LLC, 472 F. Supp. 3d 632, 639-40 (N.D. Cal. 2020) (rejecting manufacturer's argument it could enforce arbitration provision where "purchase agreement [did] not impose any warranty obligations on either the dealership or [the manufacturer]"); Pestarino v. Ford Motor Co., No. 19-CV-07890-BLF, 2020 WL 3187370, at *3-4 (N.D. Cal. June 15, 2020) (finding "lemon law claims" against manufacturer not "intertwined" with plaintiff's contract with dealership, as such claims "do not rely on the terms of the sale contract"). Here, similar to the circumstances presented in the above-cited cases, Woo does not base any claim on a duty or obligation set forth in the Sale Contract, and the Court likewise finds Honda is not entitled to enforce the Arbitration Provision against Woo.[3]

---

[3] To the extent Honda relies on Felisilda v. FCA US LLC, 53 Cal. App. 5th 486 (2020), in which a state appellate court considered an arbitration agreement containing the same language regarding "third parties" as does the Arbitration Provision here, and, based thereon, found the plaintiffs therein equitably estopped from avoiding arbitration of their claims against a nonsignatory manufacturer, see id. at 497, the Court again is not persuaded. The signatories there, as here, only agreed to arbitrate claims against "us," which, in turn, is defined as the dealership and its "employees, agents, successors or assigns" (see Kiser Decl. Ex. A at 4), none of which Honda purports to be. Consequently, the Court, having considered the holding in Felisilda, declines to follow it. See, e.g., Messih v. Mercedes-Benz USA, LLC, 2021 WL 2588977, at *11 (N.D. Cal. June 24, 2021) (noting Felisilda "brushed over the restrictive 'you and us' language at the beginning of the arbitration clause").

Accordingly, to the extent Honda seeks an order compelling Woo to arbitrate his claims against Honda, the motion will be denied.

**B. Schwert**

With respect to Schwert, Honda relies on an "Arbitration Agreement" attached to a sales contract titled "Buyer's Order," by which Schwertz purchased a Honda vehicle from Economy Honda Superstore ("Economy Honda"). (See Kiser Decl. Ex. B.)

The Arbitration Agreement provides that "[u]pon request of a Party, any and all Claim(s) shall be decided in binding arbitration." (See id. Ex. B at 2.) "Claim(s)" are defined as follows:

> 'Claim(s)' includes any and all disputes, claims or controversies between the Parties relating to the Vehicle, or arising out of or relating to: (a) the application for and the terms of and enforceability of the sale, lease, or financing of the Vehicle, (b) the purchase or terms of any warranty, service agreement, maintenance plan, paint/ undercarriage/interior protection product, anti-theft etching product and warranty, GAP protection, deficiency waiver addendum, or any other product or insurance, (c) any claims of breach of contract, negligence, misrepresentation, conversion, fraud, or unfair and deceptive trade practices, (d) any claim of a violation of any state or federal statute or regulation, or (e) the Vehicle's condition, warranty, workmanship, servicing, maintenance, or repair.

(See id.) The Arbitration Agreement defines "Parties" as "you and us," and, in turn, defines "you" to mean "the customer(s) who sign(s) below" and "us" to mean "the Dealer signing below, and . . . the Dealer's employees, agents, and parent and affiliated companies (including, but not limited to Cornerstone Acceptance Corporation) and their employees and agents." (See id.) Schwert signed the Arbitration Agreement as "Customer" and a representative of Economy Honda signed as "Dealer." (See id. Ex. C.)

Honda first argues the issue of whether Schwert's claims against Honda are subject to arbitration must be resolved by an arbitrator. In support thereof, Honda relies on a provision of the Arbitration Agreement stating "issues regarding whether a matter is arbitrable shall be made by the arbitrator." (See id. Ex. B at 2.) For the reasons stated above with respect to Woo's claims, the Court is not persuaded.

Next, Honda argues, it is entitled to enforce the Arbitration Provision on the basis of equitable estoppel. As set forth below, the Court again is not persuaded.

6

Under Tennessee law,[4] "when the signatory attempts to derive a nonsignatory's legal duties from the agreement containing the arbitration provision, the signatory should be estopped from denying the arbitration provision." See Blue Water Bay at Center Hill, LLC v. Hasty, 2017 WL 5665410, at *13 (November 27, 2017 Tenn. Ct. App.) Here, however, Schwert does not base any claim on a duty arising from the sales agreement.

Although Honda argues Schwert received a "direct benefit" from Honda when he entered into the sales agreement with Economy Honda (see Def.'s Mot. at 12:6-7, 13:9-10), specifically, "Honda's 3-year/36,000-mile New Vehicle Limited Warranty" that "accompanied" the sale (see SAC ¶ 67), the existence of a "but-for" factual relationship between the plaintiff's claims and the purchase agreement is, under Tennessee law, insufficient to support equitable estoppel; rather, the plaintiff's claim must "legally turn on duties set forth in" that agreement. See Blue Water Bay, 2017 WL 5665410, at *15. Here, as set forth above, Schwert's claims are not based on the sales agreement; indeed, the sales agreement expressly "disclaims" such warranty. (See Riser Decl. Ex. B at 1 (providing "[t]he only express warranties, if any, applying to the motor vehicle described [in Buyer's Order] are those offered by the manufacturer"; further providing "[t]he selling dealer makes no express warranties on the motor vehicle" and "expressly disclaims all warranties, either express or implied")); see also Kramer, 705 F.3d at 1131 (holding, under California law, where purchase agreements "expressly differentiate dealer warranties from manufacturer warranties," claims relying on beach of manufacturer's warranty "arise independently from the Purchase Agreements, rather than intimately relying on them").[5]

Accordingly, to the extent Honda seeks an order compelling arbitration of Schwert's claims, the motion will be denied.

---

[4] The parties agree Tennessee law governs enforceability of the Arbitration Agreement.

[5] The parties point to no Tennessee authority suggesting Tennessee law is to the contrary.

7

**CONCLUSION**

For the reasons stated above, Honda's motion to compel arbitration is hereby DENIED.

**IT IS SO ORDERED.**

Dated: July 7, 2021

MAXINE M. CHESNEY
United States District Judge